[Nos. 24148–6–I; 25171–6–I; 24789–1–I.   Division One.   May 6, 1991.]

THE STATE OF WASHINGTON, *Respondent,* v. LEONARD C. WRIGHT, *Appellant.*

*In the Matter of the Personal Restraint of* LEONARD C. WRIGHT, *Petitioner.*

*Andrew Zinner* of *Washington Appellate Defender Association,* for appellant.

*Michael E. Rickert, Prosecuting Attorney,* and *David Needy, Deputy,* for respondent.

GROSSE, C.J.—Leonard C. Wright (Wright) appeals his conviction for unlawful possession of a firearm and possession of a controlled substance. On direct appeal Wright challenges the trial court's determination that evidence seized in two separate searches of his home was admissible at trial. He argues that the first of two searches exceeded the scope of the warrant, resulting in tainted information and evidence forming the basis for the second warrant, thus requiring the results of the second warrant to be suppressed.

Additionally, Wright filed two personal restraint petitions. The first petition presents arguments virtually identical to those in the direct appeal; the second petition contends he was denied face–to–face confrontation with his accuser at trial on the charge of second degree rape, and further alleges that he was denied his right of access to the courts by being refused sufficient legal research materials. We affirm the convictions and dismiss the personal restraint petitions for the reasons set forth below.

## FACTS

Burlington police were dispatched to an unknown disturbance at Wright's residence. When police arrived they found Wright and a young man fighting in the front yard. The call to police had been made from a neighbor's house by either Wright's 15–year–old daughter, K., or by neighbors. The police were told that Wright arrived home around 9:30 p.m. to find K. and a girl friend, C., in K.'s bedroom. At some point K. left the room to put clothes in the dryer and Wright allegedly placed his hands under the covers of K.'s bed and onto C.'s body. After C.'s initial protests, it was claimed Wright digitally penetrated her vagina for a period of 2 to 3 minutes until K. returned to the room.

Wright returned to his bedroom. At this point there was a knock on the front door of the house. A young man, R. (allegedly C.'s boyfriend), was at the door when K. answered the knock. While K. answered the door, C. came out of K.'s room as far as the hallway. Wright entered the hallway from his bedroom and handed C. a red and white vibrator. Wright then ordered K. away from the door and proceeded to get into a fight with the young man, ending up in the front yard. C. gave the vibrator to K., who threw it on her father's bed, as K. and C. left the house. Police were then summoned.

Officers arrested Wright and sought a search warrant. The warrant was issued for the police to search and seize the red and white vibrator and to "photograph crime scene". Sergeant Hanson executed the warrant around 3 a.m. He entered the residence by using a key in the door and proceeded to K.'s bedroom. Next, he entered Wright's bedroom and saw the vibrator on the bed, where he was told he would find it. As Sergeant Hanson approached the bed and the vibrator, he saw a clear glass jar in the doorway of the closet. In the jar was a brownish–green vegetable matter which he believed to be marijuana. He proceeded to photograph the vibrator on the bed and the jar of marijuana in the closet doorway. He took additional pictures of the scene from different angles in the room. While taking pictures from a corner of the room, Sergeant Hanson looked down into an open "doctor's–type bag" and saw another case inside the bag. The second case was closed but from its size and shape the officer thought it was a handgun case. He picked up the closed smaller case and opened it to find a gun.[1]

After determining that under Wright's prior sentence and probation he was not to possess firearms, and after

---

[1]Earlier that evening Sergeant Hanson received information that Wright had been convicted of second degree assault. Not knowing if Wright's possession of guns was a violation of the terms of his sentence, the officer returned the gun to its case and placed it back in the doctor–type bag.

talking to K. about her father's guns, Detective Heenan obtained and executed a second search warrant based on the fact that Sergeant Hanson had seen the gun during the first search.[2] Detective Heenan searched the entire bedroom and found no guns.[3] However, he did find additional marijuana in the so–called doctor's bag and in the dresser. The additional marijuana, combined with that found in the jar, added up to a weight of just over 40 grams.[4]

Wright was charged with the offenses of second degree rape and unlawful possession of a short firearm.[5] After the acquittal on the rape charge, an additional information was filed adding the charge of unlawful possession of a controlled substance. Trial commenced on these remaining charges and the jury returned a verdict of guilty on each count. Wright was sentenced to concurrent terms within the standard range. This appeal followed.

### DIRECT APPEAL
### Affidavit and Search Warrant

A. Vibrator. Wright contends the affidavit and the facts given to support it were insufficient to justify issuance of the original search warrant. We disagree. Police responded to an alleged incident of sexual misconduct. They were told of Wright's handing of a vibrator, an object commonly used

---

[2]K. told Detective Heenan there might be as many as two or three handguns in the house and, although she did not know exactly where they would be, they would probably be in the dresser, the nightstand, or the closet of his bedroom.

[3]In the time between the initial search and the second search, friends of Wright entered the house and removed his guns.

[4]The testimony at trial established that approximately 43 grams of marijuana were found in Wright's bedroom. Prior to trial, defense counsel caused the marijuana to be reweighed by a pharmacist. The reweighing indicated that the substance weighed 40.017 grams, the felony level being in excess of 40 grams. *See* RCW 69.50.401(e). The marijuana was found in three different locations in the bedroom: the glass jar, two containers in the black doctor–type bag, and loose in a chest of drawers.

[5]The counts were severed and a separate trial was held on the second degree rape charge. Wright was acquitted of that charge.

as a sexual device, to the alleged victim, at a time almost immediately after the claimed improper touching.[6] As to the vibrator, the warrant was clearly proper.

B. Photography and Scope. The handwritten phrase added to the warrant, "photograph crime scene", warrants further inquiry. In the case before us, discovery of the handgun justifying the second search can only be justified under the authorization to photograph, or if that is determined to be too broad, then as being inadvertent in the course of "seizing" the vibrator.[7] The initial concern is one of particularity.[8]

■■ By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement of particularity ensures that the search will be carefully tailored to its justifications, and will not take on the character of a wide-ranging exploratory search. *See Andresen v. Maryland,* 427 U.S. 463, 480, 49 L.

---

[6]The trial court determined that although probative in fact, introduction of the vibrator into evidence would be inflammatory in nature, would outweigh its probative value, and would thus be prejudicial. This ruling is not in issue here as it was not appealed by the State.

[7]The question of inadvertence and discovery of the handgun was not at issue below, nor is it argued on appeal. The recent opinion of the United States Supreme Court in *Horton v. California,* __ U.S. __, 110 L. Ed. 2d 112, 110 S. Ct. 2301 (1990) eviscerates part of the long-standing test found in *Coolidge v. New Hampshire,* 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022 (1971). In *Horton* the Supreme Court concluded that even though inadvertence is characteristic of most legitimate "plain view" seizures, it is not a necessary condition. This issue has yet to be addressed in the Washington courts in light of the *Horton* opinion.

[8]"The Warrant Clause of the Fourth Amendment categorically prohibits the issuance of any warrant except one 'particularly describing the place to be searched and the persons or things to be seized.'" *Maryland v. Garrison,* 480 U.S. 79, 84, 94 L. Ed. 2d 72, 107 S. Ct. 1013 (1987). The manifest purpose of the particularity requirement is to prevent general searches. "General searches have long been deemed to violate fundamental rights." *Marron v. United States,* 275 U.S. 192, 195, 72 L. Ed. 231, 48 S. Ct. 74 (1927). Article 1, § 7 of the Washington State Constitution contains similar protections. *See State v. Myrick,* 102 Wn.2d 506, 510, 688 P.2d 151 (1984); *see also State v. Olson,* 32 Wn. App. 555, 557, 648 P.2d 476 (1982).

Ed. 2d 627, 96 S. Ct. 2737 (1976). Thus the scope of a lawful search is "defined by the object of the search and the places in which there is probable cause to believe that it may be found." *United States v. Ross,* 456 U.S. 798, 824, 72 L. Ed. 2d 572, 102 S. Ct. 2157 (1982).

General searches in Washington are prevented both by the requirements of the Fourth Amendment and by provisions of our own state constitution. The place to be searched and the things to be seized must be particularly described. *See State v. Christiansen,* 40 Wn. App. 249, 254, 698 P.2d 1059 (1985). But this requirement alone does not sufficiently limit the search. Knowledge that an object connected with alleged criminal activity is to be found on certain premises is not a basis for permitting an unrestricted search of those premises. *United States v. Chadwell,* 427 F. Supp. 692 (D. Del. 1977). Rather, an intrusion upon the person's expectation of privacy in the premises should extend no further than is necessary to find the particular object(s). *See Katz v. United States,* 389 U.S. 347, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967).

The *Katz* case is a landmark decision in Fourth Amendment search and seizure cases. It is an electronic surveillance case in which the Supreme Court held the government's activities in electronically listening to and recording Katz's telephone conversation violated the privacy upon which he justifiably relied while using a telephone booth, and thus constituted a "search and seizure" within the meaning of the Fourth Amendment. The Court then proceeded to hold that the electronic eavesdropping, although apparently undertaken upon a strong probability that Katz was using the telephone in violation of federal law, was an unconstitutional search because the agents had not first obtained a search warrant.

In his concurring opinion in *Katz,* Justice Harlan explained what he believed the opinion meant. Since *Katz,*

many lower courts have relied on Justice Harlan's explanation, as did a majority of the Supreme Court in later cases.[9] His explanation of the *Katz* rule is:

> As the Court's opinion states, "the Fourth Amendment protects people, not places." The question, however, is what protection it affords to those people. Generally, as here, the answer to that question requires reference to a "place." My understanding of the rule that has emerged from prior decisions is that there is a twofold requirement, first that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as "reasonable." Thus a man's home is, for most purposes, a place where he expects privacy, but objects, activities, or statements that he exposes to the "plain view" of outsiders are not "protected" because no intention to keep them to himself has been exhibited. On the other hand, conversations in the open would not be protected against being overheard, for the expectation of privacy under the circumstances would be unreasonable.

*Katz v. United States,* 389 U.S. at 361. This rule has been oversimplified in *Terry v. Ohio,* 392 U.S. 1, 9, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968) and others, by stating the *Katz* holding as the "reasonable 'expectation of privacy'" test. The *Katz* rule must be applied on a case–by–case basis.

In the case before us, Wright argues there was an extended general search after the seizure of the vibrator and the discovery of the jar of marijuana. Wright is not challenging the right of officers to photograph a crime scene where there is a reasonable nexus to the crime or to the "thing" specified in the warrant, but is contending that in this case, the taking of the additional photographs in his bedroom, after the initial discovery of the vibrator and the jar of marijuana, exceeded the permissible scope of the search,[10] and violated his expectation of privacy. We do not agree.

---

[9]*See California v. Ciraolo,* 476 U.S. 207, 90 L. Ed. 2d 210, 106 S. Ct. 1809 (1986); *Smith v. Maryland,* 442 U.S. 735, 61 L. Ed. 2d 220, 99 S. Ct. 2577 (1979).

[10]There is no question with respect to the plain view of the jar of marijuana because the officer testified he saw it "contemporaneously" as he viewed the vibrator on the bed, an item which was specifically set out in the warrant.

■ After considering the holding in *Katz* and its progeny we conclude that the discovery of the handgun during the first search was no more than a de minimis invasion of Wright's general right of privacy while the officer was photographing, and not the result of an extension of the original search at all.[11] This is especially true in light of the fact that the officer was appropriately in this room of the house pursuant to the warrant. The officer had a right to photograph what he saw without transcending privacy interests not already subsumed in the intrusion allowed by the warrant. There is nothing in the record to indicate that when the officer went around the bed to shoot a photo of the scene from a different angle he had any purpose in mind other than to accurately reflect what he found when he entered the room.[12] "[W]hen a law enforcement officer is

---

[11]In *Coolidge v. New Hampshire*, 403 U.S. 443, 467, 29 L. Ed. 2d 564, 91 S. Ct. 2022 (1971), *overruled in part on other grounds in Horton v. California*, ___ U.S. ___, 110 L. Ed. 2d 112, 110 S. Ct. 2301 (1990), the Court found that a warrantless seizure on probable cause of evidence found in execution of the warrant enumerating other evidence is proper because only "[a] minor peril to Fourth Amendment protections" is involved. The same can be said in the case before us here.

[12]The *Horton* case held that the inadvertence requirement of the *Coolidge* plurality's decision was flawed. First, the fact that a police officer is "interested" in an item and fully expects to find it should not invalidate its seizure if the search is confined to an area and duration by a warrant's terms or by a valid exception to the warrant requirement. Second, the suggestion that the inadvertence requirement is necessary to prevent the police from conducting general searches, or from converting specific warrants into general warrants, is not persuasive because that interest is served by the requirements that (1) a warrant be particularized or not issued, and (2) a warrantless search be circumscribed by the exigencies which justify its initiation. The prohibition against general searches and warrants is based on privacy concerns, which are not implicated when an officer with a lawful right of access to an item in plain view seizes it without a warrant.

In the case here, the gun was observed but not seized. The observation was made while the officer was photographing the crime scene, and was a basis for the probable cause for obtaining the second warrant. *See Steele v. United States*, 267 U.S. 498, 69 L. Ed. 757, 45 S. Ct. 414 (1925) (police standing where they had a right to be looked into garage and saw contraband in open view through the doorway; this furnished probable cause for obtaining warrant by which they lawfully entered and seized the contraband).

able to detect something by utilization of one or more of his senses while lawfully present at the vantage point where those senses are used, that detection does not constitute a 'search' within the meaning of the Fourth Amendment." 1 W. LaFave, *Search and Seizure* § 2.2, at 320 (2d ed. 1987).

We have found no Washington case which specifically pertains to the right, or limitation of the right, of investigating officers to photograph a "crime scene" during a valid search. Two Texas cases are instructive. In *Tocher v. State,* 501 S.W.2d 921, 924 (Tex. Crim. App. 1973), the controlling issue posited for review was whether the Fourth Amendment proscribed the photography of property in plain view but not described in the warrant by an officer lawfully in a residence. The court held the photographing of the crime scene was proper. More instructive is *Gordon. v. State,* 640 S.W.2d 743 (Tex. Ct. App. 1982). The *Gordon* court held that a photograph taken of the alleged homicide scene during a search pursuant to a warrant did not constitute a seizure of evidence any more than did the knowledge which the officers executing the warrant gained from personal observation. However, the court limited the holding by language indicating the photographs were valid as evidence *only if* the observation was otherwise legally made and the officers did not exceed the scope of the warrant by taking the photographs.[13] We agree with the *Gordon* court and adopt its holding, taking special note of the limitation. Here, there is nothing in the record to indicate the officer was exceeding the scope of the warrant in taking photographs.

We reiterate that no issue of inadvertence has been raised in this case. Further, Wright has not challenged the

In addition, the camera was not, itself, used to enhance the view beyond what Sergeant Hanson could see with the naked eye.

[13]This holding takes into account that objects falling within the plain view of an officer who has the right to be in a position to have the view are subject to seizure and may be introduced into evidence.

apparent decision that the handgun was illegal contraband. Therefore on the direct appeal, the conviction is affirmed.

## Personal Restraint Petitions

Wright has brought on two personal restraint petitions which have been consolidated with this case.

The first petition alleges two constitutional errors. The first alleged error is that he was denied a face–to–face confrontation with those testifying against him as is permitted under the "confrontation clause" of the United States Constitution. This was made known to the court at his first trial, which was the trial on the charges of second degree rape.

The courtroom in which he was tried apparently does not allow those sitting at the defendant's table visual contact with the witness stand. This, as a technical problem, may haunt the Skagit County courtroom under the reasoning of *Coy v. Iowa,* 487 U.S. 1012, 101 L. Ed. 2d 857, 108 S. Ct. 2798 (1988) (screening between the witness and the accused is not allowed). However, the alleged error is of no consequence here because as a party seeking relief from personal restraint Wright has the burden of showing actual prejudice resulting from the alleged error, *In re Hews,* 99 Wn.2d 80, 660 P.2d 263 (1983). Wright was acquitted of the rape charge. He can show no prejudice.

The second issue contained in this petition is Wright's claim that he was denied access to the courts. He contends the trial court impermissibly limited his access to legal materials, writing implements, materials, and envelopes and stamps to mail documents to his attorney and to the court. However, an order was entered allowing Wright four books per week, paper, writing implements and at least four stamps a week. Again, under the *Hews* case, Wright has not shown prejudice as is indicated by the fact that he has filed these two petitions. Neither of his contentions in this petition has merit and as such it is dismissed.

In his second petition, Wright alleges there was an illegal search and seizure of articles from his home pursuant to an

invalid search warrant, that the scope of the search was exceeded, and other issues along the lines of the direct appeal.

Under RAP 16.4(d) this court grants relief by a personal restraint petition only if other remedies are inadequate. Here, the issues raised in Wright's second petition are virtually identical to those raised in the direct appeal. As such, the petition is dismissed.

We affirm the convictions and dismiss the personal restraint petitions.

SCHOLFIELD and PEKELIS, JJ., concur.