DECISION
Thomas DiBartolo (Mr. DiBartolo), the plaintiff in this case, is currently an inmate at the Maximum Security Facility at the Adult Correctional Institution (ACI) in Cranston, Rhode Island. While incarcerated, Mr. DiBartolo sought access to a certain forensic text to aid him in his quest for post-conviction relief. The ACI officials denied his request, and thereafter Mr. DiBartolo filed this complaint against the Rhode Island Department of Corrections (RIDOC) and its officials, arguing that his constitutional right to access the courts has been violated. Subsequently, the RIDOC filed a motion to dismiss Mr. DiBartolo's complaint, or, in the alternative, for summary judgment as to all of Mr. DiBartolo's claims. Mr. DiBartolo objects to the motion.
 Facts and Travel
In 1997, Mr. DiBartolo was convicted of the first degree murder of his wife in the Washington State Superior Court and was subsequently transferred from Washington to the ACI for incarceration. Since his conviction, Mr. DiBartolo has been representing himself pro se in several unsuccessful post-conviction relief proceedings in the federal and Washington state court systems. Currently, Mr. DiBartolo states that he is preparing further state and federal post-conviction relief claims, seeking a vacation of his conviction on the argument that false forensic evidence related to the victim's time of death was presented at his trial and led to his wrongful conviction. In preparing his case for post-conviction relief, Mr. DiBartolo used materials purchased at his own expense, which he would read in a secluded area before shipping them to a third party outside of the prison system. In August of 2003, while conducting his research, Mr. DiBartolo sought access to a particular forensic text entitled, "What the Corpse Revealed: Murder and the Science of Forensic Detection." On September 4, 2003, the Warden of the Maximum and High Security facilities, James Weeden, denied Mr. DiBartolo's request pursuant to RIDOC policy #24.01-3 (Inmate Mail), on the grounds that the book was detrimental to the safety of the prison. Mr. DiBartolo unsuccessfully appealed this decision up the chain of command at the ACI. In response to the denial, Mr. DiBartolo filed this petition, arguing that the RIDOC and its officials violated his constitutional right of access to the court by denying him access to this text.
The RIDOC has moved to dismiss Mr. DiBartolo's complaint, arguing that: (1) Mr. DiBartolo's claims are barred by the procedural default rule, as he failed to raise the issue of false forensic evidence related to the time of death in his direct appeal; (2) Mr. DiBartolo's constitutional claim is fatally flawed because he has failed to establish an actual injury; and (3) it is the duty of the prison administrators, not the courts, to make decisions concerning institutional operations of the prison.
 Standard of Review
This Court will grant a motion to dismiss under Rule 12(b)(6) "'when it is clear beyond a reasonable doubt that the plaintiff would not be entitled to relief from the defendant under any set of facts that could be proven in support of the plaintiff's claim.'" Hendrick v.Hendrick, 755 A.2d 784, 793 (R.I. 2000) (citations omitted). In making this determination, the Court "views the facts in the light most favorable to the nonmoving party." Giuliano v. Pastina, Jr.,793 A.2d 1035, 1036 (R.I. 2002) (citations omitted). "Rule 12(b)(6) does not deal with the likelihood of success on the merits, but rather with the viability of a plaintiff's bare-bones allegations and claims as they are set forth in the complaint." Hyatt v. Vill. House Convalescent Home,Inc., 880 A.2d 821, 823-824 (R.I. 2005) (citations omitted). Accordingly, the Court will "analyze each of the counts in plaintiff's complaint in light of the notably lenient standards of our Rule 12(b)(6) jurisprudence. Under those standards, it must be assumed that the allegations in the complaint are true. Further, a Rule 12(b)(6) motion is not to be granted unless the defendant can establish that plaintiff has no entitlement to relief." Id.
 Analysis Procedural Default Rule
The RIDOC first alleges that Mr. DiBartolo's petition should be denied because the time of death issues he will raise in his federal and state post-conviction relief efforts are barred by the procedural default rule. On the direct appeal from his conviction, Mr. DiBartolo raised six issues; he argued that the court erred in (1) admitting evidence of his extramarital affairs to show motive and intent; (2) excluding expert testimony regarding perception and memory reliability of eyewitnesses who make observations while under stress; (3) excluding claimed excited utterance testimony purportedly identifying another suspect; (4) denying his motion for change of venue due to media publicity; (5) denying his mistrial motion after a courthouse security guard made comments to jurors during trial; and (6) denying his motion for a new trial based upon juror misconduct during deliberations. The state argues that, as Mr. DiBartolo did not raise the evidentiary issue regarding time of death in his direct appeal, he cannot raise it in either his state Personal Restraint Petition or his federal claims. For support, RIDOC cites Massaro v. Unied States, 538 U.S. 502 (2003). In that case, the Supreme Court found that federal ineffective assistance of counsel claims can be raised for the first time in a collateral action under28 USCS 2255, regardless of whether the petitioner could have raised the issue on direct appeal. However, the RIDOC argues that inMassaro, regardless of the holding as to ineffective assistance of counsel claims, the Supreme Court reaffirmed the strength of the procedural default rule. In that case, the Supreme Court noted that "the general rule [is] that claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice." The RIDOC argues that this general rule should be applied in this case, barring Mr. DiBartolo's new post-conviction relief claims, and making his request for resources moot.
The procedural default rule conserves judicial resources and preserves the finality of judgments, rendering it an important underlying principle of the American justice system. However, it does not appear that this Court is the proper forum to determine the potential viability of Mr. DiBartolo's petitions — particularly his Washington state Personal Restraint Petition — vis a vis the procedural default rule.
The Washington Court Rules of Appellate Procedure allow a petitioner to file a Personal Restraint Petition to challenge an unlawful conviction. A conviction will be deemed unlawful, inter alia, if "[m]aterial facts exist which have not been previously presented and heard, which in the interest of justice require vacation of the conviction, sentence or other order entered in a criminal proceeding. . ." Wash. RAP 16.4. This language indicates that petitioners may use the Personal Restraint Petitions to raise challenges to convictions based on previously undiscovered evidence that could not possibly have been raised on appeal. In addition, there is Washington case law in which Personal Restraint Petitions that raised issues nearly identical to those raised on appeal were dismissed, suggesting that these petitions are, in part, to be used to litigate newly discovered claims. SeeState v. Wright, 61 Wash.App. 819, 810 P.2d 935 (1991) (review denied). Therefore, this Court will not dismiss Mr. DiBartolo's petition for the forensic text on the basis of the procedural default rule, for it cannot be said with certainty that the federal or Washington state courts will dismiss his underlying petitions on this basis.
Establishment of an "Actual Injury"
In Lewis v. Casey, 518 U.S. 343 (1996), the United States Supreme Court held that in order for an inmate to make a prima facie case that his constitutional right to access the courts has been denied, he must establish that the inadequacies of the prison resources resulted in an "actual injury." The RIDOC argues that Mr. DiBartolo's complaint is fatally flawed because he has not demonstrated how the denial of this particular textbook actually injured his efforts to pursue a legal claim. Mr. DiBartolo argues that he was injured because he cannot fully prepare the argument for his post-conviction relief petitions without this book.
The issue before the Court, therefore, is whether the RIDOC's denial of this particular text so injured Mr. DiBartolo in his effort to seek post-conviction relief that it rose to the level of a constitutional violation of his right to access the courts. In Bounds v. Smith,430 U.S. 817 (1977), the United States Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."Bounds, 430 U.S. at 828. In Lewis, the Supreme Court re-examined this issue and clarified the duties that the prison authorities have to ensure that the prisoners' rights are protected. The Supreme Court clearly stated that prison officials are not constitutionally obligated to enable inmates to become "litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims."Id. at 355. However, the prison must provide tools "that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement."Id. In order to prevail on a constitutional claim, however, the inmate must be able to show that the lack of resources actually caused him injury.
 "He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint." Lewis, 518 U.S. at 351.
However, the Supreme Court also found that prison officials do not need to provide the inmate with every possible resource in order to avoid causing him an "actual injury."
 ". . . [S]everal statements in Bounds went beyond the right of access recognized in the earlier cases on which it relied, which was a right to bring to court a grievance that the inmate wished to present. . . . These statements appear to suggest that the State must enable the prisoner to discover grievances, and to litigate effectively once in court. . . . These elaborations upon the right of access to the courts have no antecedent in our pre-Bounds cases, and we now disclaim them." Lewis, 518 U.S. at 354. (Emphasis added.)
In the instant case, the denial of the forensic text has not prevented Mr. DiBartolo from accessing the courts. Although the book may aid Mr. DiBartolo in his research, Lewis makes it clear that the prison is not required to help the inmate litigate effectively once in court.Id. Mr. DiBartolo has been able to file several petitions in the Washington state courts and the federal court system. See,e.g., State v. DiBartolo, 143 Wash.2d 1026, 22 P.3d 803 (Wash. 2001);DiBartolo v. Lehman, 126 S.Ct. 31 (U.S. 2005) (denial of certiorari);In re Application for Relief from Personal Restraint of DiBartolo,115 Wash.App. 1008 (Wash.App. Div.3 2003). The fact that Mr. DiBartolo has been able to obtain the legal knowledge necessary to file his claims properly, and that he currently has one claim on appeal in the federal system, indicates that the denial of the forensic text in question did not wholly prevent him from accessing the courts. It is clear fromLewis, and the subsequent interpretation of it by the lower courts, that there is no constitutional mandate that an inmate be given access to every text in publication that may possibly aid him in his argument.
In addition, other lower courts have interpreted Lewis to find that inmates' rights have not been abridged as long as they are able to present their grievances to the Court, even if the prison officials have not provided every tool requested. Indeed, some courts have found that an inmate's constitutional right to access the courts was not denied even when the prison officials provided that inmate with fewer resources than Mr. DiBartolo has been given. See, e.g., Davidson v. Murray,371 F. Supp. 2d 361 (D.N.Y. 2005) (finding that the prison officials' denial of certain law books and writing supplies to an inmate did not violate his constitutional rights to access the courts when the inmate was able to file several appeals and claims in the courts); Stotts v. Salas,938 F. Supp. 663 (D.Haw 1996) (holding that an inmate's lack of access to out of state law books and his 21-day deprivation of legal materials did not constitute actual injury).
Comparatively, it appears that Mr. DiBartolo has been given more resources than inmates in these other states. The RIDOC allowed Mr. DiBartolo to purchase as many scientific books as possible before deeming certain books to be a safety risk. In addition, his complaint does not allege any shortcomings in the law library or legal resources provided by the RIDOC. The RIDOC's relative generosity lends even further credence to the Court's finding that Mr. DiBartolo's rights have not been violated.
Deference to Prison Administrators
The Court's decision to grant the RIDOC's motion to dismiss is further bolstered by the deference this Court gives to the director of the RIDOC in making decisions concerning the security of the facility. Indeed, this deference is of such import that the Legislature has enacted a statute to ensure that the prison officials are allowed the proper amount of discretion. R.I.G.L. 1956 § 42-56-10. This statute grants the director of the RIDOC power to determine which actions will be necessary to ensure the security of the prison. Specifically, the statute gives the director the power to "[m]aintain security, safety, and order at all state correctional facilities . . ." § 42-56-10(2).
The Rhode Island Supreme Court has long interpreted this statute to find that the director's decisions on maintaining order, safety, and security in the prison receive strong deference. See, e.g., Dep't ofCorr. v. R.I. Bhd. of Corr. Officers, 867 A.2d 823 (R.I. 2003);Vose v. Rhode Island Bhd. of Correctional Officers, 587 A.2d 913 (R.I. 1991); State of Rhode Island Department of Corrections v. Rhode IslandBrotherhood of Correctional Officers, 725 A.2d 296 (R.I. 1999).
Here, the RIDOC argues that the requested texts would provide a safety risk to the prison community, as such forensic science texts could allow Mr. DiBartolo or another inmate to tamper with a crime scene within the institution. The prison officials, who are well-acquainted with the day-to-day running of the facility and the particular safety risks inherent in such an institution, are best situated to determine which books pose a threat to the prison, and thus their decisions on these matters will be given deference. Moreover, this Court finds that the prison officials have acted reasonably and in good faith in balancing the interests of Mr. DiBartolo with the safety and security concerns of the institution.
 Conclusion
This Court finds that the RIDOC's denial of Mr. DiBartolo's request for this particular forensic text does not constitutionally violate his right to access the courts, as Mr. DiBartolo has failed to establish that such denial caused him to suffer an "actual injury." As such, the facts alleged in the complaint do not state a claim upon which relief can be granted, and, accordingly, RIDOC's motion to dismiss Mr. DiBartolo's complaint is granted.
Counsel shall submit an order for entry.