[No. 28925-0-I.   Division One.   December 6, 1993.]

THE STATE OF WASHINGTON, *Respondent,* v. DONALD STEVE JONES, *Appellant.*

*David Allen, Richard Hansen, Todd Maybrown,* and *Allen & Hansen, P.S.,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Michael Lang, Deputy,* for respondent.

GROSSE, J. — The appellant, Donald S. Jones, appeals his convictions on one count of first degree child molestation and one count of first degree rape of a child.

The charges in this case stem from an incident alleged to have occurred between September 1, 1989, and January 31, 1990. Jones was living with his girlfriend, Lorayne Hanson, and her children from a previous marriage. According to the testimony of Hanson and Jones, Hanson's 7-year-old daughter, A., was occasionally observed acting out sexually. One evening, Jones and Hanson went out to dinner and had several drinks. After they returned from dinner, Jones undressed and got into bed. Hanson was out of the room putting the children to bed. Hanson testified that she walked into the bedroom and found Jones unclothed, lying on the bed next to A., whose nightgown was pulled up to her chest. A. was not wearing underwear. Jones had his hand on A.'s stomach and was sexually aroused. Hanson testified that Jones explained to Hanson that he was trying to discuss sex with A.

Jones testified that A. had climbed into bed with him, and they started discussing her recent sexual acting out. Jones alleged that A. reached out and touched him. Jones also testified that during the course of their discussion he did momentarily touch her vaginal area, but stated his touching her was not caused by any sexual motivation and he was not sexually aroused.

Hanson testified that she spoke with A. about the incident the next morning. A. told her Jones put his tongue in her mouth and rubbed her vaginal area. Eventually a school counselor, Bruce Vatne, contacted Child Protective Services (CPS) after A. told him Jones had touched her vaginal area and kissed her. A CPS caseworker, Judy Mitchell, interviewed A. During the interview, A. reiterated a claim that Jones had put a finger inside her vagina and that it hurt. Mitchell placed A. in protective custody. A. was examined by Dr. Rebecca Wiester on February 20, 1990. Dr. Wiester concluded that the findings from the physical were consistent with vaginal penetration. Dr. Wiester testified that A. told her Jones had touched her vaginal area while they were on the bed.

Dependency proceedings were filed. Mitchell testified she read the allegations from the dependency petition to Jones, who did not deny that he had touched A. and further admitted that he had asked her to perform oral sex on him.

Jones was charged with one count of first degree child molestation and one count of first degree rape of a child. Prior to trial, A. was found competent to testify. The trial court ruled her statements to Dr. Wiester; Bruce Vatne, the school counselor; Judy Mitchell, the CPS caseworker; and to her mother were admissible. The court also allowed Mitchell to testify as to Jones' statements to her.

The prosecution called Mitchell as a witness for the State. Mitchell testified to her background, which included a masters of social work from the University of Washington. Mitchell had been working as a professional social worker since 1976. She estimated she had worked with approximately 300 to 400 children in her present occupation. Mitchell testified to A.'s hearsay statements and also testified that it was her impression that A. "thought it was all her fault". Mitchell testified that she pointed out to A. that it was not her fault and stated that this phenomenon is not uncommon among the sexually abused children she sees.

Mitchell then testified, "[S]he [A.] said to me 'Believe me, believe me, I am telling you that this happened,' and I said 'I believe you.'" The following exchange then occurred between the prosecutor and Mitchell:

Q: Judy, based again on the hundreds of kids that you have seen, what was your assessment of [A.]?
[DEFENSE COUNSEL]: Objection; calls for an opinion.
THE COURT: Overruled.
Q: Go ahead and answer the question.
A: My assessment is that this child had some legitimate fears, based on some touching of her by Donnie. I felt that this child had been sexually molested by Donnie at that point.

On cross examination, Mitchell was questioned about A.'s sexual acting out. Mitchell testified A. had also related instances of victimization by others. On redirect, Mitchell was questioned about the acting out of sexual behaviors in abused children:

Q: [By the prosecutor] Based on your interaction with other children, children that you have found and have known to be sexually abused, is it uncommon to see them sexually acting-out?
[DEFENSE COUNSEL]: Objection. Same objection, your Honor, lack of foundation for an expert opinion.
THE COURT: Overruled.
A: It's very common for children who have been sexually abused to exhibit sexualized behaviors and to be revictimized by other parties.
Q: Based on your experience and all of the interviews that you have had with children, is it uncommon for those children to talk about having nightmares and dreams?
[DEFENSE COUNSEL]: Same objection, your Honor.
THE COURT: Overruled.
A: It is not uncommon, and we refer to this as night terrors.

Mitchell also stated A. told her other instances of contact with Jones had occurred, testifying that A. told her "there was another bad touch, she said another bad touch two times". Bruce Vatne, the school counselor, also testified that A. had related other instances of contact: "I asked her then is this the one time that this had happened and did this

happen just the one time, and she said no, it happened lots of times."[1]

A. testified at trial that Jones had put his tongue in her mouth and touched her vagina and that it hurt. During her testimony, Jones' view of A. was blocked by the position of the prosecutor questioning A. The defendant did not object during examination, but during recess brought to the court's attention the fact that he could not see A. The court found that the prosecutor's blocking was inadvertent and told Jones that he could position himself in a different spot where he could see the witness.

Subsequently, on cross examination of Jones, the following exchange took place:

BY [PROSECUTOR]:
Q: Mr. Jones, you felt hurt and you were concerned when [A.] was testifying?
A: Yes, I did.
Q: And yet weren't you frustrated because I was blocking your view from her such that you could not stare at her as she was testifying here; isn't that right? Is that right?
A: Yes, I did.

No objection was made to this colloquy. During direct examination, Jones was questioned about his knowledge of other allegations of sexual abuse against A. The prosecution's hearsay objection was sustained, although defense counsel argued the other allegations were relevant to show Jones' state of mind. Jones admitted that he had briefly touched A.'s vaginal area during the bedroom incident, but denied that he touched her for sexual gratification.

Proceeding with closing argument, the prosecutor stated:

We as a society talk, we proclaim, we articulate, we are concerned about our children, and many people sing songs about our children. Whitney Houston talks about how they will inherit the earth. And yet we still have a system that requires that child to have to walk in through those two big

---

[1]Jones mistakenly ascribes this statement to Dr. Wiester. Brief of Appellant, at 40.

doors as a very, very small person and walk up here in front of twelve people, twelve grownups whom they don't know, and sit in this chair in a courtroom such as this, with the defendant sitting right there, staring at them.

. . . .

And just briefly, one more thing, because, quite frankly, you folks heard his testimony, you are reasonable people, you bring in your life experience and your common sense, and was that story reasonable? Absolutely not. "I love [A.], I care about [A.]," but at the same time he wants to have direct eye contact with her. Why? And what was the result of that direct eye contact that first day? She broke down and she cried and she told you she was afraid. She was afraid of who? Of Donnie. And the CPS worker told you that outside how upset and how disturbed and how frightened she was so that she refused to walk through those two big doors again.

No objection was made to either statement. During the prosecutor's rebuttal argument, she stated:

[T]he State has to be very, very careful which charges it brings because it has to be able to prove to you the specifics of, the specific parts of this crime, and to be told that it's only happened a number of times but not to be able to draw on the specifics, a charge may not be brought for all those other times, but we know this is not the only time, we know she said it happened a number of times, and we know he has had access to her since she was a child.

Again, no objection was made.

Jones submitted proposed jury instructions, but did not include a "Petrich instruction", *see State v. Petrich*, 101 Wn.2d 566, 683 P.2d 173 (1984), appropriate when multiple instances of conduct are at issue. The jury found Jones guilty of one count of child molestation in the first degree and one count of rape of a child in the first degree. The defense moved for a new trial, alleging prosecutorial misconduct on the basis of the prosecutor's closing argument ("Whitney Houston" speech) and her references to multiple instances of Jones' abuse. The defense also alleged error in the court's admission of Mitchell's expert testimony on common traits of sexual abuse victims. The court denied the motion for a new trial. Jones appeals his convictions.

■ As an initial matter, Jones contends that the prosecutor's "Whitney Houston" speech and her reference to multi-

ple instances of abuse in closing argument constitute prose-cutorial misconduct requiring reversal of his conviction. Appeals to the prejudice and passion of the jury and references to matters outside the evidence are improper. *State v. Belgarde*, 110 Wn.2d 504, 507, 755 P.2d 174 (1988). The defendant bears the burden of establishing that the remarks are improper and that there is a substantial likelihood the misconduct affected the verdict. *State v. Mak*, 105 Wn.2d 692, 726, 718 P.2d 407, *cert. denied*, 479 U.S. 995 (1986), *sentence vacated on writ of habeas corpus sub nom. Mak v. Blodgett*, 754 F. Supp. 1490 (W.D. Wash. 1991), *aff'd*, 970 F.2d 614 (9th Cir. 1992), *cert. denied*, 113 S. Ct. 1363 (1993). In general, when no objection to prosecutorial misconduct is made at trial, a reviewing court must ascertain whether any curative instruction could have remedied the improper remarks. The issue may be reviewed if it is "so flagrant and ill intentioned that no curative instructions could have obviated the prejudice engendered by the misconduct." *State v. Belgarde*, 110 Wn.2d at 507. Here, no objection was made until Jones moved for a new trial after the verdict had been rendered.[2] The courts of this state have consistently stated that any objection to prosecutorial misconduct is waived by failure to make a timely objection and request a curative instruction. *State v. Swan*, 114 Wn.2d 613, 790 P.2d 610 (1990), *cert. denied*, 498 U.S. 1046 (1991). As stated by the court in *Swan*:

> The absence of a motion for mistrial at the time of the argument strongly suggests to a court that the argument or event in question did not appear critically prejudicial . . . in the context of the trial. Moreover, "[c]ounsel may not remain silent, speculating upon a favorable verdict, and then, when it is adverse,

---

[2]Although Jones argues that his motion for a new trial sufficiently preserved these alleged errors for review, the cases cited by Jones do not support such a proposition in the context of prosecutorial misconduct. *State v. Ray*, 116 Wn.2d 531, 540, 806 P.2d 1220 (1991), *In re Lee*, 95 Wn.2d 357, 363, 623 P.2d 687 (1980) and *State v. Fagalde*, 85 Wn.2d 730, 731, 539 P.2d 86 (1975) state broadly that counsel may raise an error either during trial or in a motion for a new trial to properly preserve it for review. In an instance of prosecutorial misconduct, however, the inquiry is whether a curative instruction could have rectified the comment and erased any prejudicial effect on the jury.

use the claimed misconduct as a life preserver on a motion for new trial or on appeal."

(Footnotes omitted.) *Swan*, 114 Wn.2d at 661.

Accordingly, the inquiry is whether the comments were so flagrant and ill intentioned that no instruction could neutralize their prejudice. In this case, the alleged misconduct included the prosecutor's reference to a general societal problem of concern for children and how the judicial system can be frightening to them. While this comment is improper to the extent it is designed to appeal to the passion and prejudice of the jury, it does not rise to the level of flagrancy requiring reversal. Jones correctly analogizes this comment to the comment disapproved of in *State v. Bautista-Caldera*, 56 Wn. App. 186, 195, 783 P.2d 116 (1989), *review denied*, 114 Wn.2d 1011 (1990), wherein the prosecutor asked the jury to "[l]et her and children know that you're ready to believe them and [e]nforce the law on their behalf." (Italics omitted.) This court found that such a comment, although improper, was not so egregious as to require reversal. Similarly, any prejudicial effect of the "Whitney Houston" comment in this case could have been considerably lessened by a prompt curative instruction.

■ Jones also complains that in closing argument, the prosecutor improperly alluded to multiple instances of abuse beyond the one incident at issue at trial: "[W]e know this is not the only time, we know she said it happened a number of times". A prosecutor has wide latitude in closing argument to draw and express reasonable inferences from the evidence. *State v. Hoffman*, 116 Wn.2d 51, 95, 804 P.2d 577 (1991). However, a prosecutor may not make statements that are unsupported by the record and prejudice the defendant. *State v. Ray*, 116 Wn.2d 531, 550, 806 P.2d 1220 (1991); *State v. Claflin*, 38 Wn. App. 847, 851, 690 P.2d 1186 (1984), *review denied*, 103 Wn.2d 1014 (1985).

■ The State justifies its reference to other instances of Jones' misconduct on the basis that it was rebutting Jones' allegations that the bedroom incident occurred after A. had begun to sexually act out. The defense argued that the State's

chronology was backward because A.'s sexual acting out occurred prior to Jones' touching her. The State claimed it was entitled to rebut this chronology by posing an alternative explanation for A.'s sexual acting out prior to the incident at issue. Prosecutorial remarks that may otherwise be improper do not constitute grounds for reversal if they are made in reply to defense arguments, unless a curative instruction would not have cured them. *State v. Swan*, 114 Wn.2d at 663. Evidence of other instances of touching had been briefly discussed in the record in the testimony of Bruce Vatne, the school counselor, and Judy Mitchell, who related A.'s statements of other instances of touching by Jones.

Jones argues that under *State v. Montague*, 31 Wn. App. 688, 691, 644 P.2d 715 (1982) and *State v. Torres*, 16 Wn. App. 254, 257, 554 P.2d 1069 (1976) reference to other acts was improper. However, *Montague* is distinguishable; the prosecutor in that case introduced evidence of another rape charge on cross examination of the defendant; no evidence had been presented on the issue and the defense counsel was unaware of the incident. *Torres* is also distinguishable because the prosecutor in his opening statement alluded to other crimes not charged in the information. In contrast here, the prosecutor in rebuttal mentioned incidents already discussed at trial, allegedly to refute the defense's theory of the case in closing argument. Even if the prosecutor's reference in rebuttal was improper, the prejudice accruing from it could have been alleviated with a prompt curative instruction.

Of greater concern is Jones' claim that his right of confrontation was compromised by the prosecutor's questions on cross examination and the remarks made in closing argument regarding his staring at A. during her testimony. Although Jones did not object to these comments at trial, issues of constitutional magnitude may be reviewed initially on appeal. *State v. Scott*, 110 Wn.2d 682, 688, 757 P.2d 492 (1988). In analyzing an alleged constitutional error raised initially on appeal, we must first determine whether the error raises a constitutional issue, then determine whether the error is

manifest. If the error is manifest, we will address the merits of the issue. Finally, if error was committed, we will apply a harmless error analysis. *State v. Lynn*, 67 Wn. App. 339, 345, 835 P.2d 251 (1992).

The Sixth Amendment provides that an accused has the right to confront adverse witnesses.[3] The scope of that right within the context of child abuse proceedings has been addressed by the United States Supreme Court. The Supreme Court held in *Coy v. Iowa*, 487 U.S. 1012, 101 L. Ed. 2d 857, 108 S. Ct. 2798 (1988) that in a child sexual abuse case, an appellant's right to face-to-face confrontation was violated when the court allowed a screen to be placed between the testifying child victims and the accused. The court reasoned that face-to-face confrontation was essential to fairness. *Coy v. Iowa*, 487 U.S. at 1019. *See also State v. Wright*, 61 Wn. App. 819, 829, 810 P.2d 935 (recognizing that visual contact with witness stand is important under *Coy v. Iowa, supra*), *review denied*, 117 Wn.2d 1012 (1991).

Jones does not claim that his right of confrontation was directly violated, but alleges that prejudice resulted from the prosecutor's comments in cross examination and in closing argument regarding his eye contact with A. Jones claims the prosecutor's comments indicated to the jury that he should be penalized for exercising his right of confrontation. In *State v. Rupe*, 101 Wn.2d 664, 683 P.2d 571 (1984), the Washington Supreme Court stated that the State may not act in a manner that would unnecessarily chill the exercise of a constitutional right, nor may the State draw unfavorable inferences from the exercise of a constitutional right. *Rupe*, 101 Wn.2d at 705 (citing *United States v. Jackson*, 390 U.S. 570, 581, 20 L. Ed. 2d 138, 88 S. Ct. 1209 (1968); *State*

---

[3]U.S. Const. amend. 6 provides in part:

"In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . .". Jones argues article 1, section 22 of our state constitution provides broader protection than the federal confrontation clause. However, Jones has not provided this court with briefing of the factors set forth in *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808, 76 A.L.R.4th 517 (1986); therefore, we decline to consider the issue. *State v. Reding*, 119 Wn.2d 685, 696, 835 P.2d 1019 (1992).

*v. Frampton*, 95 Wn.2d 469, 627 P.2d 922 (1981); *Griffin v. California*, 380 U.S. 609, 614, 14 L. Ed. 2d 106, 85 S. Ct. 1229 (1965); *State v. Mace*, 97 Wn.2d 840, 650 P.2d 217 (1982)).

Although no Washington cases address the commentary of prosecutors on the exercise of the right to confrontation, the issue has been addressed by other jurisdictions. In *Dyson v. United States*, 418 A.2d 127, 131 (D.C. 1980), the District of Columbia Court of Appeals concluded that prosecutorial comment on the defendant's right of confrontation constituted prosecutorial misconduct. In closing argument, the prosecutor commented on the presence of the defendant during the testimony of adverse witnesses and the delay of the defendant's own testimony until all other witnesses had taken the stand. The District of Columbia Court of Appeals found the prosecutor's improper comments substantially prejudiced the defendant and reversed the conviction. Similarly, in *Sherrod v. United States*, 478 A.2d 644, 654 (D.C. 1984), the District of Columbia Court of Appeals extended *Dyson* to apply to cross examination. The court found a prosecutor's question about the defendant listening to the testimony of other witnesses to be improper.

We find the analysis of *Dyson* and *Sherrod* applicable to the instant case. The prosecutor commented on Jones' frustration when he could not see A. testifying, and in closing argument alluded to the fact her courtroom contact with Jones was so traumatic that she could not return to court. The State argues that its cross examination of Jones was justified to rebut Jones' testimony about his love for A., relying on *State v. Graham*, 59 Wn. App. 418, 427, 798 P.2d 314 (1990) and *State v. Olson*, 30 Wn. App. 298, 300-01, 633 P.2d 927 (1981), which allow the scope of cross examination to include questioning to qualify or rebut direct testimony.

■ ■ The State claims its questioning was designed to rebut Jones' asserted feelings toward A. However, as the District of Columbia Court of Appeals noted in *Sherrod*, consistent with *Rupe*, such questioning is impermissible when it invites the jury to draw a negative inference from the

defendant's exercise of a constitutional right. Jones was validly exercising his right of confrontation and the State's commentary did constitute an impermissible use of constitutionally protected behavior. Because the error is of constitutional magnitude it may not be deemed harmless unless the untainted evidence is so overwhelming that it necessarily leads to a finding of guilt. *State v. Bagwell*, 68 Wn. App. 891, 893, 846 P.2d 587 (1993) (citing *State v. Guloy*, 104 Wn.2d 412, 426, 705 P.2d 1182 (1985), *cert. denied*, 475 U.S. 1020 (1986)). We find the prosecutor's comments were harmless beyond a reasonable doubt. The untainted evidence in this case is overwhelming, including an eyewitness account and Jones' own admission that he touched A.

▪ Jones also contends the trial court erred by permitting testimony of Judy Mitchell, the CPS caseworker. An expert may not testify on an ultimate issue of fact based upon the expert's perception of the witness's veracity. *State v. Fitzgerald*, 39 Wn. App. 652, 657, 694 P.2d 1117 (1985); *State v. Alexander*, 64 Wn. App. 147, 154, 822 P.2d 1250 (1992). Nor may the expert state an opinion as to the defendant's guilt; such testimony invades the province of the jury to weigh the evidence and decide the credibility of witnesses. *Alexander*, 64 Wn. App. at 154; *State v. Madison*, 53 Wn. App. 754, 760, 770 P.2d 662, *review denied*, 113 Wn.2d 1002 (1989).

Jones alleges Mitchell's testimony regarding her remarks to A. that "I believe you" and her statement that "I felt that this child had been sexually molested by Donnie at that point" are impermissible opinions as to A.'s truthfulness and Jones' guilt. The "I believe you" statement, however, taken in the context of the surrounding testimony, appears to have been intended to reassure the child in an effort to encourage the child to respond. Moreover, even if the remark would have been the proper subject of an objection, no objection was made and therefore error may not be raised unless it constitutes manifest constitutional error. *State v. Madison*, 53 Wn. App. at 762. In *Madison*, an expert witness testified to her observations of the complaining witness, and her statements implied her belief in the victim's story. Because the expert did not

explicitly state her belief in the victim's story the *Madison* court held the testimony did not constitute manifest constitutional error. *Madison*, 53 Wn. App. at 763. Similarly, in this case, Mitchell did not expressly state to the jury that she believed A., therefore any error may not be raised for the first time on appeal.

■ Mitchell's statement that she felt Jones had molested A. is a much more explicit statement of belief in Jones' guilt. The State argues that Jones insufficiently preserved error on this comment because the objection was inadequate. However, if the ground for objection is apparent from the context, the objection is sufficient to preserve the issue. *State v. Black*, 109 Wn.2d 336, 340, 745 P.2d 12 (1987); *State v. Braham*, 67 Wn. App. 930, 934-35, 841 P.2d 785 (1992). In this case, it is apparent the statement was an opinion as to the guilt of the defendant, which implicitly invades the province of the jury, and the objection was sufficient to preserve the alleged error.

■ It is well established that no witness may testify as to an opinion on the guilt of the defendant, whether directly or inferentially.[4] *See State v. Haga*, 8 Wn. App. 481, 492, 507 P.2d 159, *review denied*, 82 Wn.2d 1006 (1973); *Black*, 109 Wn.2d at 348; *Madison*, 53 Wn. App. at 760; *Alexander*, 64 Wn. App. at 154. Mitchell's statement plainly indicated her opinion that she believed Jones had molested A. Therefore, the trial court's admission of this statement was error. This error is of constitutional magnitude because it invades the province of the jury, therefore it is harmless only if the untainted evidence is so overwhelming that it necessarily supports a guilty verdict. *State v. Carlin*, 40 Wn. App. 698, 703, 700 P.2d 323 (1985). As discussed above, other evidence of Jones' guilt is overwhelming, and therefore we find the error was harmless.

Mitchell also testified as to behaviors of A. that were common behaviors of sexually abused children, specifically her

---

[4]Testimony suggesting that the accused is a member of a group that has a statistically higher incidence of child abuse is likewise impermissible because of its prejudicial effect. *State v. Petrich*, 101 Wn.2d 566, 576, 683 P.2d 173 (1984); *State v. Braham, supra*; *State v. Maule*, 35 Wn. App. 287, 293, 667 P.2d 96 (1983); *State v. Steward*, 34 Wn. App. 221, 224, 660 P.2d 278 (1983).

propensity to sexually act out and her nightmares. Expert testimony is admissible under ER 702:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

This rule requires the witness be qualified as an expert, any opinion testimony must be based on a theory generally accepted by the scientific community, and the testimony must be helpful to the fact finder. *State v. Black*, 109 Wn.2d at 341. Education and practical experience may qualify a witness as an expert. *State v. Ortiz*, 119 Wn.2d 294, 310, 831 P.2d 1060 (1992). Mitchell's educational background in social work and her years of experience qualify her as an expert; moreover, Jones has not assigned error to her qualification as an expert witness.

An expert's scientific or technical testimony must be based upon a scientific principle or explanatory theory that has gained general acceptance in the scientific community. *State v. Black*, 109 Wn.2d at 342 (citing *Frye v. United States*, 293 F. 1013, 1014, 34 A.L.R. 145 (D.C. Cir. 1923)); *State v. Wilber*, 55 Wn. App. 294, 298, 777 P.2d 36 (1989). The standard has been fairly stringently applied.[5]

---

[5]*See State v. Black*, 109 Wn.2d at 346-47 (rape trauma syndrome is not scientifically reliable method probative to issue of rape); *State v. Wilber*, 55 Wn. App. at 299 (officer's expert testimony on witness's veracity not scientifically accepted method); *State v. Maule*, 35 Wn. App. at 296 (caseworker's assertions that certain broad characteristics, such as nightmares, indicate child abuse are insufficient to show scientific acceptance and reliability); *State v. Steward*, 34 Wn. App. at 223-24 (expert's theory that in his experience most injuries to children are inflicted by mother's boyfriends has insufficient scientific basis). *But see State v. Janes*, 121 Wn.2d 220, 850 P.2d 495 (1993) (testimony on the issue of battered child syndrome is sufficiently accepted to satisfy the *Frye* test); *State v. Ciskie*, 110 Wn.2d 263, 278, 751 P.2d 1165 (1988) (approving testimony on battered woman syndrome to rebut defense theory that victim's behavior was inconsistent with abuse); *State v. Allery*, 101 Wn.2d 591, 597, 682 P.2d 312 (1984) (expert testimony on the battered woman syndrome is admissible; theory is generally accepted in the scientific community); *State v. Petrich*, 101 Wn.2d at 576; *State v. Claflin*, 38 Wn. App. 847, 852, 690 P.2d 1186 (1984) (allowing testimony that delay in reporting is not unusual in child victims is not abuse of discretion),

However, if expert testimony does not concern novel theories or sophisticated or technical matters, it need not meet the stringent requirements for general scientific acceptance. *State v. Ortiz*, 119 Wn.2d at 310-11 (expert testimony on tracking suspect not subject to *Frye*). Testimony may be based on training, experience, professional observations, and acquired knowledge. *Ortiz*, 119 Wn.2d at 310; *State v. Sanders*, 66 Wn. App. 380, 386, 832 P.2d 1326 (1992). Under this principle, Mitchell's testimony regarding the sexual acting out of abused children and their experiences with night terrors could be deemed proper because an adequate foundation existed in her professional experience and observations and because an observation that a victim exhibits behavior typical of a group does not relate directly to an inference of guilt of the defendant.[6] Moreover, because the testimony is not extremely technical, the jury may judge its reliability and determine how much weight should be given to the testimony. *See Ortiz*, 119 Wn.2d at 311.

Logically, the principle articulated in *Ortiz* should apply to expert testimony regarding child abuse victims. However, such an extension of *Ortiz* is inconsistent with this court's opinion in *State v. Maule*, 35 Wn. App. 287, 667 P.2d 96 (1983). In *Maule*, a caseworker, based upon her experience at a sexual assault center, testified that sexually abused children exhibited typical behaviors. This court held, "[The caseworker's] theory that sexually abused children manifest particular identifiable characteristics was not shown to be supported by accepted medical or scientific opinion." *Maule*, 35 Wn. App. at 295-96. Moreover, the court noted:

---

*review denied*, 103 Wn.2d 1014 (1985); *State v. Mulder*, 29 Wn. App. 513, 515, 629 P.2d 462 (1981) (testimony regarding "battered child syndrome" has sufficient scientific basis).

[6]Testimony that certain behaviors or injuries of victims are not inconsistent with abuse in general has been found admissible as not constituting an opinion on the defendant's guilt. *See State v. Sanders*, 66 Wn. App. at 388; *State v. Toennis*, 52 Wn. App. 176, 185, 758 P.2d 539, *review denied*, 111 Wn.2d 1026 (1988); *see also State v. Jones*, 59 Wn. App. 744, 749-51, 801 P.2d 263 (1990), *review denied*, 116 Wn.2d 1021 (1991); *State v. Simon*, 64 Wn. App. 948, 964, 831 P.2d 139 (1991), *aff'd in part and rev'd in part on other grounds*, 120 Wn.2d 196, 840 P.2d 172 (1992).

> There is no evidence that [the caseworker] conducted any statistical study or that any other expert in the field made such a study. There is no evidence that people working in the field attach particular significance to one or more characteristics and whether certain broad characteristics noted by [the caseworker], *e.g.*, "nightmares," are, without further explanation, considered adequate indicia of child sexual abuse.

*Maule*, 35 Wn. App. at 296. More recent case law has brought into question the prohibition set forth in *Maule*. In *State v. Stevens*, 58 Wn. App. 478, 794 P.2d 38, *review denied*, 115 Wn.2d 1025 (1990), the court approved the use of expert testimony describing the behaviors of sexually abused children in general. The expert did not testify that the victim in that case fit that profile. *Stevens*, 58 Wn. App. at 497. The court affirmed the admissibility of the testimony, noting it was not being used to directly prove an element of the crime. The court also relied on *State v. Ciskie*, 110 Wn.2d 263, 751 P.2d 1165 (1988) and held the testimony was relevant to rebut a defense theory that the victims' behavior was caused by traumas other than sexual abuse. The court specifically left undecided the issue of whether such "syndrome" evidence was admissible under *Frye*. *Stevens*, 58 Wn. App. at 497 n.8.

Further, in *State v. Cleveland*, 58 Wn. App. 634, 794 P.2d 546, *review denied*, 115 Wn.2d 1029 (1990), *cert. denied*, 499 U.S. 948, 113 L. Ed. 2d 468, 111 S. Ct. 1415 (1991), this court affirmed the admissibility of expert testimony by a family therapist regarding typical behaviors of child abuse victims. The therapist testified from her own experience with abused children. The testimony was offered to assist the jury in evaluating the victim's testimony. The defense offered testimony that the victim had not reported the abuse, attacking the victim's credibility. The expert did not offer an opinion that the alleged victim had been abused or that the defendant was guilty. The court noted the expert testimony

> was really not an explanatory theory or opinion requiring acceptance by the scientific community by ER 702. [The therapist's] testimony was essentially a description of her personal observations of some of the characteristics of child sex abuse victims. Her observations are comparable to testimony of a physician describ-

ing characteristics he has personally observed in his treatment of a particular injury or disease.

(Footnote omitted.) *Cleveland*, 58 Wn. App. at 646.

Testimony of this nature, however, is closely related to generalized profile or syndrome testimony and, if *Ortiz* is applied, the safeguards to ensure the scientific reliability of such testimony are diminished. We note the distinction existing between a caseworker narrowly testifying to the behavior of abused children seen in a specific practice and more generalized assertions as to the behavior of abused children as a class. Washington has no conclusive precedent regarding the admissibility of generalized sexual abuse "syndrome" testimony under *Frye*.[7] The characterization of such testimony based solely upon the clinical observations of a caseworker is difficult. The appropriateness of characterizing this type of evidence as "scientific" was noted by experts in this area:

> In the context of child sexual abuse litigation — where the concern is reliability of novel forms of evidence — it is appropriate to characterize all of the relevant disciplines as scientific. This characterization has several advantages. First, such a characterization acknowledges the scientific element of expert medical and behavioral science testimony. Second, characterizing the disciplines as scientific recognizes that medical and behavioral science testimony based on novel principles raise[s] the concerns discussed above regarding novel scientific evidence. That is, such evidence may over-awe or confuse the jury and may be less accessible to lay analysis than more traditional forms of evidence. Finally, characterizing the disciplines as scientific makes it possible to avoid a hopeless analytical morass. If some forms of medical and behavioral science testimony are scientific and others are not, it is necessary to decide which is which. Drawing this distinction is always difficult, sometimes impossible.

Myers, Bays, Becker, Berliner, Corwin & Saywitz, *Expert Testimony in Child Sexual Abuse Litigation*, 68 Neb. L. Rev. 1, 21 (1989). As noted by the Maine Supreme Court:

---

[7]The syndrome has been referred to as "Child Sexual Abuse Accommodation Syndrome", or CSAAS (initially described by Dr. Roland Summit in *The Child Sexual Abuse Accommodation Syndrome*, 7 Child Abuse & Neglect 177 (1983). *See* Myers, Bays, Becker, Berliner, Corwin & Saywitz, *Expert Testimony in Child Sexual Abuse Litigation*, 68 Neb. L. Rev. 1, 66-68 (1989).

[T]he anecdotal clinical experience of the witness lacked any evidence of solid empirical research. . . .

In *State v. Lawrence*, 541 P.2d 1291 (Me.1988) . . . [w]e concluded that to permit jury reliance on unproven scientific techniques to bolster otherwise uncorroborated child testimony would deprive Lawrence of a fair trial.

*State v. York*, 564 A.2d 389, 390-91 (Me. 1989).

▪ We agree that when personal experience is used as a basis for generalized statements regarding the behavior of sexually abused children as a class, the testimony crosses over to scientific testimony regarding a profile or syndrome, whether or not the term is used, and therefore should be subject to the standard set forth in *Frye*.[8] When the testimony is limited to the witness's observations of a specific group, the *Frye* standard is not applicable.

Under *Frye*, generalized testimony regarding a profile of behaviors of victims of sexual abuse must be sufficiently established to have gained general acceptance by the scientific community. *State v. Black*, 109 Wn.2d at 342. Experts and authorities in the field have cautioned against the unfettered admissibility of the child sexual abuse profile testimony. *See, e.g.*, Levy, *Using "Scientific" Testimony To Prove Child Sexual Abuse*, 23 Fam. L.Q. 383 (1989); McCord, *Expert Psychological Testimony About Child Complainants in Sexual Abuse Prosecutions: A Foray Into the Admissibility of Novel Psychological Evidence*, 77 J. Crim. L. & Criminology 1 (1986); Note, *The Unreliability of Expert Testimony on the Typical Characteristics of Sexual Abuse Victims*, 74 Geo. L.J. 429 (1985-1986). The prevalent objection to such testimony is that a general profile of typical behaviors is not specific to sexual abuse, but may be produced by other traumatic events in the life of the child. *Commonwealth v. Dunkle*, 529 Pa. 168, 176-77, 602 A.2d 830, 834 (1992); *State v. Rimmasch*, 775 P.2d 388, 401 (Utah 1989). *See also* McCord,

---

[8]Nevertheless, some courts have allowed such testimony without addressing its scientific reliability. *See State v. Kim*, 64 Hawaii 598, 645 P.2d 1330 (1982); *State v. Middleton*, 294 Or. 427, 657 P.2d 1215 (1983); *State v. Moran*, 151 Ariz. 378, 728 P.2d 248 (1986).

77 J. Crim. L. & Criminology at 444-48; Note, 74 Geo. L.J. at 439-43.

Accordingly, a substantial number of courts have noted that expert testimony regarding a profile or syndrome of child sexual abuse victims is not admissible to prove the existence of abuse or that the defendant is guilty. *See State v. Michaels*, 264 N.J. Super. 579, 625 A.2d 489 (1993); *State v. J.Q.*, 252 N.J. Super. 11, 599 A.2d 172 (1991); *Commonwealth v. Dunkle, supra*; *State v. Rimmasch, supra*; *People v. Jeff*, 204 Cal. App. 3d 309, 251 Cal. Rptr. 135 (1988); *People v. Beckley*, 434 Mich. 691, 456 N.W.2d 391 (1990); *State v. York, supra*; *State v. Schimpf*, 782 S.W.2d 186 (Tenn. Crim. App. 1989). This evidence has been distinguished from battered child syndrome. *See* 68 Neb. L. Rev. at 67; *State v. Rimmasch*, 775 P.2d at 400; *Commonwealth v. Dunkle, supra* at 178. Such testimony has also been analogized to "rape trauma syndrome" testimony such as that found inadmissible in *Black*. *See Jeff*, at 333; *Beckley*, at 722-23.

Because the use of testimony on general behavioral characteristics of sexually abused children is still the subject of contention and dispute among experts in the field, we find that its use as a general profile to be used to prove the existence of abuse is inappropriate. However, we agree with the current trend of authority that such testimony may be used to rebut allegations by the defendant that the victim's behavior is inconsistent with abuse. *See, e.g., State v. J.Q., supra* at 30, 31-32 and cases cited therein; *People v. Nelson*, 203 Ill. App. 3d 1038, 561 N.E.2d 439 (1990); *People v. Beckley, supra*; *People v. Jeff, supra*. We further note that sexual acting out behavior has been viewed as more logically and clinically indicative of sexual abuse than other generalized reactions to emotional traumas such as nightmares and phobic behaviors. *See* 68 Neb. L. Rev. at 59-60.

We find a majority of other jurisdictions have reached a similar resolution with regard to generalized testimony of behaviors of abused children. A number of courts have found that testimony regarding the behaviors of a class of abused

children is not sufficiently established to meet the *Frye* standard or an equivalent test for scientific reliability under ER 702. *See People v. Jeff, supra; State v. Schimpf, supra; State v. York, supra; State v. Rimmasch, supra; Commonwealth v. Dunkle, supra.*[9]

In sum, the use of generalized profile testimony, whether from clinical experience or reliance on studies in the field, to prove the existence of abuse is insufficient under *Frye*.[10] However, such testimony may be used to rebut an inference that certain behaviors of the victim, such as sexual acting out, are inconsistent with abuse.[11]

In the case at hand, Mitchell's testimony included generalized assertions about common behaviors of sexually abused children. Her answers exceeded the limitations of her personal experience as set forth in the prosecutor's carefully framed questions. However, Mitchell's testimony regarding sexual acting out was in rebuttal to a defense theory that A.'s sexual behaviors were inconsistent with her allegations of abuse against Jones. Moreover, although the defense objected

---

[9]Other courts, however, have found that such "soft" behavioral testimony need not meet the *Frye* test because it is not a novel scientific theory. *See Bostic v. State*, 772 P.2d 1089, 1096 (Alaska Ct. App. 1989); *People v. Beckley, supra*. Behavioral testimony of sexually abused children has also been held sufficient to satisfy the *Frye* test. *See Ward v. State*, 519 So. 2d 1082, 1084 (Fla. Dist. Ct. App. 1988).

[10]Although we are bound by this state's consistent adherence to the *Frye* test, we recognize the difficulties presented when *Frye* is applied to general behavioral testimony of this nature. Determining whether testimony is "scientific" in character is difficult. Recognizing the rigid standard set forth by *Frye*, the United States Supreme Court recently ruled that *Frye* is no longer the standard under the federal rules for admitting expert scientific testimony at trial. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, ___ U.S. ___, 125 L. Ed. 2d 469, 113 S. Ct. 2786 (1993).

[11]We do not find this result precluded by *Cleveland* or *Stevens*. The testimony in *Cleveland* was offered to explain the victim's reluctance to report abuse and assist the jury in weighing her testimony. The victim's mother had testified that the victim never reported the abuse and that she was not always truthful. *Cleveland*, 58 Wn. App. at 637. In *Stevens*, the testimony was offered to rebut a defense theory that the children's behavior was inconsistent with sexual abuse by the defendant.

to the general foundation of the prosecutor's questions, which were not improper in form, Jones failed to object to Mitchell's answers, which exceeded the scope of personal observations. Therefore, we find that he cannot now complain that an inadequate foundation existed for her testimony under *Frye*; that objection should have been made at trial. Therefore, although we find Mitchell's testimony about nightmares during the State's case in chief to be have been improper, the error was not sufficiently preserved.

▉ Jones also claims that the trial court erred by not submitting a "Petrich" instruction to the jury when testimony at trial discussed A.'s hearsay statements about other incidents of touching by Jones. A defendant has a constitutional right to be convicted by a jury that unanimously agrees that the crime charged in the information has been committed. *State v. Kitchen*, 110 Wn.2d 403, 409, 756 P.2d 105 (1988); Const. art. 1, § 22 (amend. 10) (right to unanimous jury verdict); U.S. Const. amend. 6 (right to jury trial). If the prosecution submits evidence and testimony of multiple acts, any one of which could support the count charged, the State must either elect one incident to rely on for a conviction or the jury must be instructed that it must unanimously agree on a specific criminal act. *State v. Kitchen*, 110 Wn.2d at 409; *State v. Petrich*, 101 Wn.2d 566, 572, 683 P.2d 173 (1984). Although Jones did not propose a unanimity instruction at trial, the issue is one of constitutional magnitude because it impinges upon Jones' right to trial by jury and may be raised initially on appeal. *State v. Crane*, 116 Wn.2d 315, 325, 804 P.2d 10, *cert. denied*, 501 U.S. 1237, 115 L. Ed. 2d 1033, 111 S. Ct. 2867 (1991); *State v. Fitzgerald*, 39 Wn. App. 652, 655, 694 P.2d 1117 (1985).

The State argues that it elected the bedroom incident discussed in detail above as the basis for the two counts. Although the bulk of the trial testimony centered around the bedroom incident, and the information submitted by the State relied on the one incident, other incidents were referred to at trial. Moreover, despite the State's assertions, it is not apparent from the record which incident was elected. Indeed, the "to

convict" instruction states that the conduct occurred between September 1989 and January 31, 1990. Because witnesses testified to A.'s statements that multiple and distinct incidents had occurred, a unanimity instruction should have been given to avoid this issue.

The State argues that even if a unanimity instruction was required, the error was harmless. The failure to give a unanimity instruction is presumed prejudicial and is not harmless error unless a rational trier of fact could not have a reasonable doubt as to whether the evidence of each incident establishes the commission of the crime. *State v. Camarillo*, 115 Wn.2d 60, 65, 794 P.2d 850 (1990); *State v. Kitchen*, 110 Wn.2d at 411 (citing *State v. Loehner*, 42 Wn. App. 408, 411, 711 P.2d 377 (1985) (Scholfield, A.C.J., concurring), *review denied*, 105 Wn.2d 1011 (1986)); *State v. Huckins*, 66 Wn. App. 213, 222, 836 P.2d 230 (1992), *review denied*, 120 Wn.2d 1020 (1993). The State argues that this case is similar to *Camarillo* and *Loehner*, where the evidence of the case was solely dependent on the credibility of the victim versus the credibility of the defendant. The evidence in those cases was controverted only by the defendant's denial of the victim's allegations. Therefore, the failure to give a unanimity instruction was harmless on the basis that if a rational trier of fact would have believed the testimony of one incident it necessarily would have no reasonable doubts as to the other incidents because the acts were not distinguishable.

Here, A. testified to only one incident of contact with Jones: the incident on the bed. A.'s testimony stated that no other touches had occurred. This directly contradicts her hearsay statements to Mitchell and Vatne that multiple instances of touching had taken place. However, this testimony regarding other acts was not the focus of the trial. The question becomes one of whether a rational basis existed for jurors to entertain a reasonable doubt as to whether the evidence of each incident established the commission of a crime. Given the paucity of evidence of the other acts, and the fact that the testimony with regard to these acts was hearsay and inconsistent with the victim's trial testimony, we do not believe a rational

trier of fact could have found that any other crimes were in fact committed. To put it another way, in this case we do not believe that there was sufficient evidence to go to the jury with respect to the other acts — the evidence was simply not sufficiently substantial to raise this matter to a multiple acts case.[12] Consequently, the lack of a unanimity instruction does not constitute prejudicial error requiring reversal on the count of first degree child molestation.

Jones also argues that the trial court erred by excluding Jones' testimony regarding his awareness of allegations of sexual abuse by others against A. The testimony was intended to show that Jones was aware of A.'s sexual contact with others and his allegedly innocent intent to understand and correct her during the bedroom incident. Jones argues that such testimony is not hearsay because it was offered to prove Jones' state of mind at the time of the bedroom incident and was not offered to prove the truth of the matter asserted.

■ Whether a statement is hearsay depends upon the purpose for which it is being offered. If the statement is offered to prove the mental or emotional state of the individual hearing the statement, it is not hearsay because it is not being used to prove the truth of the matter asserted. *State v. Hamilton*, 58 Wn. App. 229, 231, 792 P.2d 176 (1990); *State v. Mounsey*, 31 Wn. App. 511, 522 n.3, 643 P.2d 892, *review denied*, 97 Wn.2d 1028 (1982); 5B K. Tegland, Wash. Prac., *Evidence* § 336 (3d ed. 1989). *See also State v. Smith*, 56 Wn. App. 909, 911, 786 P.2d 320 (1990). In such a case, the statement is admissible but a proper limiting instruction should accompany the testimony. *Hamilton*, 58 Wn. App. at 232. Because the testimony in this case was offered

---

[12]It is noteworthy that in both *State v. Kitchen*, 110 Wn.2d at 411, and *State v. Crane*, 116 Wn.2d at 325, the court restricts the application of *Petrich* to those cases where multiple acts are *alleged*. While it is not all that clear here, this was not a case where the State alleged multiple acts. What the State did with respect to the evidence of multiple acts may well have been improper for other reasons as discussed above but it did not change the focus of this particular case from the bedroom incident insofar as the *Petrich* rule is concerned.

to prove Jones' intent during his interaction with A., it was offered for a nonhearsay use and should not have been excluded on that basis.

However, the trial court's exclusion of this testimony is alternatively supported on other grounds. A trial court's exclusion of evidence may be upheld on any proper basis; the trial court's erroneous determination does not necessarily require reversal. *State v. Markle*, 118 Wn.2d 424, 438, 823 P.2d 1101 (1992); *State v. Rivas*, 49 Wn. App. 677, 688, 746 P.2d 312 (1987). The evidence at issue is highly prejudicial. ER 403 allows the exclusion of evidence if its probative value is substantially outweighed by its prejudice. Here, the evidence of prior unsubstantiated allegations of abuse against A. would be very prejudicial because it could imply that A.'s sexual acting out with others indicated a propensity for sexual contact. The value of the evidence to prove Jones' state of mind is questionable; as the State points out, the issue of A.'s sexual acting out was discussed in other testimony and Jones' awareness of that acting out was brought out in direct examination by his counsel. The trial court's evidentiary rulings are reversible only for a manifest abuse of discretion. *Markle*, 118 Wn.2d at 438 (citing *State v. Mak*, 105 Wn.2d 692, 718 P.2d 407, *cert. denied*, 479 U.S. 995 (1986)). Here, the trial court's determination may be upheld on the basis that the evidence was unduly prejudicial, thus no manifest abuse of discretion exists.

Jones claims that his convictions for both offenses are a violation of the prohibition against double jeopardy.[13] Jones also alleges that the trial court erred in finding that the two charges did not merge for purposes of sentencing. Two offenses are considered to be the "same offense" for double jeopardy purposes if the offenses are

> the same in law and in fact. If there is an element in each offense which is not included in the other, and proof of one offense would not necessarily also prove the other, the offenses

---

[13]The Fifth Amendment provides that no individual shall be "subject for the same offense to be twice put in jeopardy of life or limb". U.S. Const. amend. 5.

are not constitutionally the same and the double jeopardy clause does not prevent convictions for both offenses.

*In re Fletcher*, 113 Wn.2d 42, 47, 776 P.2d 114 (1989) (quoting *State v. Vladovic*, 99 Wn.2d 413, 423, 662 P.2d 853 (1983)). The underlying offenses for Jones' convictions are not the "same offense" under the principle set forth in *Fletcher*, however. Child molestation requires that the offender act for the purpose of sexual gratification,[14] an element not included in first degree rape of a child, and first degree rape of a child requires that penetration or oral/genital contact occur,[15] an element not required in child molestation. Each offense requires the State to prove an element that the other does not, and therefore the offenses are not the "same offense" for double jeopardy purposes.

Under this same analysis, child molestation does not merge as a lesser included offense of rape of a child.[16] An instruction on a lesser included offense is proper when "each element of the lesser offense is a necessary element of the offense charged" and the evidence supports an inference that the

---

[14]RCW 9A.44.083 provides in part:

"(1) A person is guilty of child molestation in the first degree when the person has sexual contact with another who is less than twelve years old and not married to the perpetrator and the perpetrator is at least thirty-six months older than the victim."

RCW 9A.44.010 provides in part:

"(2) 'Sexual contact' means any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party."

[15]RCW 9A.44.073 provides in part:

"(1) A person is guilty of rape of a child in the first degree when the person has sexual intercourse with another who is less than twelve years old and not married to the perpetrator and the perpetrator is at least twenty-four months older than the victim."

[16]The analysis of this issue is further complicated, however, by the fact that the trial court erroneously instructed the jury that child molestation was a lesser included offense of first degree rape of a child. Jones has not assigned error to this instruction, nor did Jones object to its submission at trial. In fact, Jones argues that child molestation is a lesser included offense of rape of a child. A lesser included offense instruction that is not excepted to at trial becomes the law of the case; any error arising from the instruction is invited error and is harmless beyond a reasonable doubt. *State v. Mak*, 105 Wn.2d at 748-49.

lesser offense was committed. *State v. Speece*, 115 Wn.2d 360, 362, 798 P.2d 294 (1990). Because child molestation requires an element of sexual gratification, it is not a lesser included offense of first degree rape of a child. *State v. Saiz*, 63 Wn. App. 1, 5, 816 P.2d 92 (1991). *See also State v. Markle*, 118 Wn.2d at 436 (offense of indecent liberties, which requires element of sexual gratification, does not merge with first degree statutory rape as lesser included offense); *State v. Walden*, 67 Wn. App. 891, 894, 841 P.2d 81 (1992) (fourth degree assault is not lesser included offense of second degree rape because assault requires proof of intent).

■ Jones argues that to avoid double jeopardy, *State v. Noltie*, 116 Wn.2d 831, 809 P.2d 190 (1991) and *State v. Newman*, 63 Wn. App. 841, 850, 822 P.2d 308, *review denied*, 119 Wn.2d 1002 (1992) require the State to submit a unanimity instruction when the same evidence is presented to support both counts. *Noltie* and *Newman* are inapposite on double jeopardy grounds. In *Noltie*, the State charged the defendant with two separate instances of statutory rape, which were legally identical, and submitted a unanimity instruction. The Supreme Court recognized that the two incidents were not the same in fact, and the unanimity instruction ensured that the jury would rely on separate evidence for each count. Likewise, in *State v. Newman, supra*, the defendant was charged with multiple acts of statutory rape, which were legally identical. The unanimity instruction ensured that the jury find factual distinctions between the separate counts. Here, as discussed above, the two offenses in this case are legally and factually distinct, even though both may have occurred during the same incident. Therefore the failure to provide a unanimity instruction did not violate the prohibition against double jeopardy or the doctrine of merger.

Overall, the procedures followed at trial in this case leave much to be desired. The evidence was substantial, however, and included not only the victim's testimony but an eyewitness account of the incident and an admission by Jones that

he touched A. We do not find that the cumulative effect of the errors deprived Jones of his right to a fair and impartial jury trial. *Cf. State v. Alexander,* 64 Wn. App. 147, 154, 822 P.2d 1250 (1992).

Accordingly, we affirm the convictions.

BAKER and KENNEDY, JJ., concur.

Reconsideration denied February 28, 1994.

Review denied at 124 Wn.2d 1018 (1994).