IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 80147-3-I |
| Respondent, | |
| v. | DIVISION ONE |
| DALE LANE BRADLEY, | UNPUBLISHED OPINION |
| Appellant. | |

CHUN, J. — A jury found Bradley guilty of one count of first degree rape of a child and two counts of first degree child molestation. At trial, the trial court admitted evidence that the victim had told others that Bradley had assaulted her and a recording of an interview of the victim by a detective. Bradley appeals, asking us to abandon the fact of complaint doctrine and claiming evidentiary error and prosecutorial misconduct. We affirm.

BACKGROUND

Bradley lived with his girlfriend and her three daughters, one of whom is R.K. One morning on the bus to school, R.K. told her friend W.H. that someone had sexually abused her. W.H. took R.K. to the school counselor, Sarah Day, and told Day what R.K. had told her. After speaking with R.K., Day called Child Protective Services (CPS), and a CPS officer and a King County Sheriff's detective arrived and interviewed R.K. In the interview, R.K. alleged that Bradley had sexually abused her on multiple instances over the past two years, including,

Citations and pin cites are based on the Westlaw online version of the cited material.

most recently, the Tuesday before the interview. The State charged Bradley with one count of first degree rape of a child and three counts of first degree child molestation.

The trial court admitted evidence, under the fact of complaint rule, that R.K. had told W.H., her sisters, and Day that Bradley raped and molested her. It also admitted portions of a recording of law enforcement's interview of R.K. under the recorded recollection exception to the hearsay rule.

In closing argument, the State commented on R.K.'s testimony:

[R.K.] may not have lived up to your expectations of what you wanted from her on the stand, but that does not mean that her words are not credible and believable. And when I say that, I want to be very clear about what that means. That includes the recordings played in court, what she said in court, and what she said to Dr. Wiester before her exam.

[R.K.] didn't remember a lot of what happened when she came in here. It is very clear that [R.K.] was nervous and embarrassed, and it was all over her face and it was in her voice, even though she was denying that she didn't want to talk about it.

Think about how she prepared to come to court? Well, her mother woke her up, made her take a shower, gave her a stale donut to eat, and put her in a taxi cab.

Compare her responses here in court to when she was sitting in her counselor's office with Ms. Day and Detective Gerlitz. She wasn't having trouble answering questions.

Think about the environment she was in when she was talking to Dr. Wiester. She wasn't having trouble answering Dr. Wiester's questions. She felt comfortable. She felt safe. And it wasn't like this.

This setting, we're in a formal courtroom with a judge sitting in a tall chair, wearing a black robe, and there's a room full of adults, mostly strangers, including all of you. There are older men, younger men, older women, younger women, you folks sitting in the jury box, and there were spectators sitting in all of those benches. But perhaps what maybe impacted [R.K.] most is that Dale Bradley, the man that sexually abused her, the man that called her a bitch and a dumbass and stupid, the man that told her to touch herself, just like

2

he showed her how to do in those videos, the man that licked her vagina, the man that walked her to the store one day and asked her if she liked it and then bought her a treat, well, he's the man she's testifying against, *and he's sittin' right there*.

(Emphasis added.)

The jury found Bradley guilty of one count of first degree rape of a child and two counts of first degree child molestation.

ANALYSIS

Bradley makes three arguments in support of reversal. First, he says that the fact of complaint rule, which allows admission of evidence that a victim reported a sex offense, stems from outdated and misogynistic stereotypes, and that we should no longer recognize such admission as proper. Next, he says that the trial court erred in admitting the police interview because it does not meet the standard for reliability required by the record recollection exception to the hearsay rule. Finally, he says the State committed prosecutorial misconduct in its closing argument by improperly referring to his presence at trial.

A. Evidentiary Admissions

We review for abuse of discretion a trial court's admission of evidence. State v. Heutink, 12 Wn. App. 2d 336, 356, 458 P.3d 796 (2020). "A trial court abuses its discretion if its decision is based on untenable grounds, an erroneous view of the law, or is manifestly unreasonable." State v. Dillon, 12 Wn. App. 2d 133, 146, 456 P.3d 1199 (2020).

### 1. Fact of complaint

Bradley says we should abandon the fact of complaint doctrine as it stems from a faulty and offensive premise. We decline his invitation.

The fact of complaint rule, a case law exception to the hearsay rule, derives from the antiquated doctrine of "hue and cry." State v. Murley, 35 Wn.2d 233, 236–37, 212 P.2d 801 (1949); State v. Chenoweth, 188 Wn. App. 521, 532, 354 P.3d 13 (2015). "The fact of complaint or hue and cry doctrine allows the prosecution in sex offense cases to present evidence that the victim complained to someone after the assault." Chenoweth, 188 Wn. App. at 532. The rule allows admission only of the fact that the victim made such a timely complaint, and not any evidence of their attacker's identity or nature of the act. State v. Ferguson, 100 Wn.2d 131, 135–36, 667 P.2d 68 (1983). The feudal notion that "a female naturally complains promptly of offensive sex liberties upon her person" underlies the hue and cry rule. Murley, 35 Wn.2d at 237. Courts have increasingly recognized that victims of sexual abuse commonly might delay in reporting their attackers. See, e.g., State v. Holland, 77 Wn. App. 420, 427–28, 891 P.2d 49 (1995) (affirming admission of expert testimony that a sexual abuse victim might delay in reporting). And evidentiary rules have largely replaced the doctrine. See, e.g., State v. Makela, 66 Wn. App. 164, 172–74, 831 P.2d 1109 (1992) (holding no error in admission of testimony about a victim's prior consistent statements about the fact of their assault under ER 801(d)(1)(ii)); State v. Wilson, 60 Wn. App. 887, 889–91, 808 P.2d 754 (1991) (holding no error

in admission of ER 404(b) evidence of the defendant's previously assaulting his wife to explain her delay in reporting sexual abuse). But the fact of complaint rule remains the law as declared by our Supreme Court and binds us. See, e.g., Ferguson, 100 Wn.2d at 144.[1]

2. Recorded recollection

Bradley says the trial court erred in admitting portions of R.K.'s police interview because it did not meet the recorded recollection exception's requirement for reliability. He concedes that the police interview met the standards of reliability for the most recent instance of alleged sexual assault. The State accepts this concession but counters that trial court properly admitted all the portions of the recording. We agree with the State.

Under ER 803(a)(5), a record about a matter about which a witness once had knowledge but now has insufficient recollection to enable them to testify fully and accurately is admissible if the record accurately reflects the witness's knowledge and was made when the matter was fresh in their memory. To determine whether a record accurately reflects a witness's knowledge, courts apply a totality of circumstances analysis. In re Det. of Peterson, 197 Wn. App. 722, 727–28, 389 P.3d 780 (2017). "The totality of the circumstances includes: '(1) whether the witness disavows accuracy; (2) whether the witness averred accuracy at the time of making the statement; (3) whether the recording process is reliable; and (4) whether other indicia of reliability establish the trustworthiness

---

[1] This decision tracks our decision in State v. Martinez, noted at 9 Wn. App 2d 1044, 2019 WL 2751295 at *3, which is currently under review by our Supreme Court.

of the statement.'" Id. at 728 (quoting State v. Alvarado, 89 Wn. App. 543, 552, 949 P.2d 831 (1998)).

In its analysis of whether R.K. made or adopted her statements when the matter was fresh in her memory, the trial court addressed the timing of R.K.'s interview as related to the timing of the instances of abuse:

> Three, that the record was made or adopted by the witness when the matter was fresh in her memory.
>
> [The State] correctly points out that this is not—there's not a specific temporal rule here, other than the matter needs to be fresh in the witness's mind or memory.
>
> I would indicate that the allegation here is that there was an ongoing series of events that culminated about 72 hours prior to the discussion that [R.K.] had with her friend, then her counselor, then CPS, then law enforcement. And I think it is a reasonable reading of this record that it was, in her mind, a series of sort of ongoing and related events, which had most recently happened very recently at the time that she spoke to law enforcement, so I do find that that element is met.

The trial court also concluded that the recordings accurately reflected R.K.'s knowledge:

> Finally, that the record reflects [R.K.]'s prior knowledge and accuracy.
>
> And I understand that she's been a little bit inconsistent today about whether she remembers giving the statement to Detective Gerlitz, what she remembers talking about, what she knew at the time. The Court is certainly permitted to look at corroborating evidence to make an independent decision about whether the record reflects accurately [R.K.]'s prior knowledge.
>
> Under Alvarado, the Court considers factors including whether she disavows the accuracy, which she has not done, and, in fact, she affirmed the accuracy of the statements to Detective Gerlitz.
>
> I would also add that in the testimony of Detective Gerlitz, she testified—Detective Gerlitz testified that she spoke for about an hour with [R.K.], and that at the end she asked [R.K.] about how she felt

6

about speaking with Detective Gerlitz, and [R.K.] said she was nervous at first but glad she told me.

The Court finds that that is further evidence of—implicit evidence of the accuracy of the statements.

She did aver the accuracy at the time of making the statement. I have no reason to distrust the accuracy of the recording process itself. There's been foundation laid for the recording process, as well as the accuracy of the transcription process.

And in terms of other indicia of reliability, I have, in addition to all of the factors that I've already explored in my ruling, the fact that there were very consistent statements made to Ms. Day, as memorialized in Exhibits 21 and 22.

Bradley concedes the trial court did not abuse its discretion in admitting the portion of R.K.'s recollection that recounted an instance of him sexually abusing R.K. on the Tuesday before she made the recorded statement. But he says that the trial court abused its discretion in admitting the portions of the recollection in which she alleged other instances of abuse, because those discussions stemmed from conduct that took place "over the entire two year charging period without any reference to specific times or events." In effect, he says that the other instances of abuse were too far in time away from R.K.'s recollection for her discussion of them to be considered reliable.[2]

Bradley shows that temporal proximity is one of many factors a court may properly consider in a reliability analysis, but he cites no law establishing that it is determinative. Cf., State v. Nava, 177 Wn. App. 272, 296, 311 P.3d 83 (2013) (considering that the witnesses made their recorded statements within a month after the events in question as a factor tending to show reliability); United States

---

[2] Bradley addresses the interview's temporal proximity to the alleged instances of sexual abuse in the context of ER 803(a)(5)'s accuracy requirement, but we note that it relates more to whether the witness made the statement when the matter at hand was fresh in her mind.

v. Patterson, 678 F.2d 774, 779–80 (9th Cir. 1982) (concluding no error in admission of a recollection of events occurring 10 months before the recollection). And the trial court did consider the temporal proximity of the interview to the alleged instances of sexual abuse, and reasonably concluded that they related enough to the most recent instance that they would be fresh in R.K.'s mind. Also, as the trial court noted, R.K. did not disavow the police interview statements at trial. She also asserted in the interview that she was telling the truth. And Bradley does not challenge the trial court's findings that the recording process itself was not reliable, and that R.K. made similar allegations to Day. The trial court did not abuse its discretion in admitting the portions of the recording of R.K.'s police interview.

C. Prosecutorial Misconduct

Bradley says the State committed prosecutorial misconduct by improperly referring to his presence during its closing argument. We disagree.

To show prosecutorial misconduct, "the defendant must establish 'that the prosecutor's conduct was both improper and prejudicial in the context of the entire record and the circumstances at trial.'" State v. Thorgerson, 172 Wn.2d 438, 442, 258 P.3d 43 (2011) (quoting State v. Magers, 164 Wn.2d 174, 191, 189 P.3d 126 (2008)). The defendant must prove "there is a substantial likelihood [that] the instances of misconduct affected the jury's verdict." Thorgerson, 172 Wn.2d at 442–43 (alteration in original) (quoting Magers, 164 Wn.2d at 191). "The 'failure to object to an improper remark constitutes a waiver of error unless

8

the remark is so flagrant and ill intentioned that it causes an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury.'" Thorgerson, 172 Wn.2d at 443 (quoting State v. Russell, 125 Wn.2d 24, 86, 882 P.2d 747 (1994)).  Defense counsel's failure to object to allegedly improper remarks made by a prosecutor "*strongly suggests* to a court that the argument or event in question did not appear critically prejudicial to [the defendant] in the context of the trial."  State v. McKenzie, 157 Wn.2d 44, 53 n.2, 134 P.3d 221 (2006) (quoting State v. Swan, 114 Wn.2d 613, 661, 790 P.2d 610 (1990)).

A defendant has state and federal constitutional rights to presence at their trial.  U.S. CONST. amend. VI; CONST. art I, § 22; Illinois v. Allen, 397 U.S. 337, 338, 90 S. Ct. 1057, 25 L. Ed. 2d 353 (1970).  "The State can take no action which will unnecessarily 'chill' or penalize the assertion of a constitutional right and the State may not draw adverse inferences from the exercise of a constitutional right."  State v. Gregory, 158 Wn.2d 759, 806, 147 P.3d 1201 (2006) (quoting State v. Rupe, 101 Wn.2d 664, 705, 683 P.2d 571 (1984)), overruled on other grounds by State v. W.R., Jr., 181 Wn.2d 757, 336 P.3d 1134 (2014).  But "not all arguments touching upon a defendant's constitutional rights are impermissible comments on the exercise of those rights."  Gregory, 158 Wn.2d at 806.  The relevant issue is "whether the prosecutor manifestly intended the remarks to be a comment on that right."  Id. at 807 (quoting State v. Crane, 116 Wn.2d 315, 331, 804 P.2d 10 (1991)).  "[S]o long as the focus of the

questioning or argument 'is not upon the exercise of the constitutional right itself,' the inquiry or argument does not infringe upon a constitutional right." Gregory, 158 Wn.2d at 807 (quoting State v. Miller, 110 Wn. App. 283, 284, 40 P.3d 692 (2002)).

In State v. Jones, we concluded that the prosecutor improperly commented on the defendant's right to confrontation by stating that the defendant insisted on staring at his victim while she testified and stating that the victim's courtroom contact with him was so traumatic that she could not return to court. 71 Wn. App. 798, 806, 809, 863 P.2d 85 (1993). But we ultimately held that the prosecutor's comments were harmless beyond a reasonable doubt. Id. at 812.

In Gregory, however, the State asked an alleged rape victim how she felt about testifying in court and being cross-examined. 158 Wn.2d at 805. The victim responded that she hated having to remember it and that she would not want her worst enemy to go through what she had. Id. Our Supreme Court held this did not constitute improper commenting on the defendant's constitutional right to cross-examine witnesses because the questioning did not *directly* implicate the right, unlike the questioning in Jones. Id. at 807–08. Instead, the court reasoned that the questioning focused on the victim's credibility and her willingness to testify despite the emotional toll of doing so. Id. at 808.

As in Gregory, and unlike Jones, the State's comments did not directly implicate Bradley's right to be present. Instead, its comment that Bradley was

"sittin' right there" spoke to R.K.'s credibility, the emotional difficulty of testifying, and any issues the jury might perceive with R.K.'s ability to testify.   The State did not make an improper comment.[3]  And defense counsel did not object to the remarks, which strongly suggests that counsel did not view the comment as critically prejudicial.  We thus conclude that the State did not commit prosecutorial misconduct.

We affirm.

_____
Chun, J.

WE CONCUR:

_____          _____

---

[3] Bradley also claims this comment constituted prosecutorial misconduct because it improperly appealed to the passions of the jury.  He cites State v. Claflin, 38 Wn. App. 847, 850, 690 P.2d 1186 (1984), in which the prosecutor read to the jury a poem that used vivid imagery to describe rape's emotional effects on its victims and included prejudicial allusions to matters outside the evidence against the defendant.  While the State's argument arguably appealed to the emotions of the jury, the State made no allusion to matters outside the evidence.