FILED
COURT OF APPEALS
DIVISION II

2014 DEC 30 AM 9: 45

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 44061-0-II |
| Respondent, | |
| v. | |
| LEE R. McCLURE, | UNPUBLISHED OPINION |
| Appellant. | |

MAXA, J. — Lee McClure appeals on multiple grounds his convictions for second degree child rape, third degree child rape, sexual exploitation of a minor, and second degree possession of depictions of a minor engaged in sexually explicit conduct. McClure makes two additional assertions in his Statement of Additional Grounds (SAG).

We hold that (1) the trial court did not violate McClure's public trial right by addressing various issues in sidebar conferences, (2) McClure failed to preserve his challenge to the State's child sexual abuse expert's testimony, (3) the prosecutor did not commit misconduct in making comments about the victim's testimony and sexual assault victims in general, (4) sufficient evidence at trial established that McClure knowingly possessed images of the victim engaged in sexually explicit conduct, (5) the trial court did not violate McClure's due process or equal protection rights by finding that prior convictions existed for persistent offender sentencing purposes, and (6) the trial court did not abuse its discretion in imposing a sentencing condition that prohibited McClure from contact with his minor son because his son was in the same class

of persons as the victim. We also reject McClure's SAG arguments. Accordingly, we affirm McClure's convictions and sentence.

## FACTS

McClure was married to Norma Jean McClure. RH, Norma Jean's[1] daughter and McClure's step-daughter, primarily lived with them. McClure and Norma Jean had a young son, AM, who also lived in the home.

In March 2011, RH reported that McClure had been sexually abusing her for several years. The State charged McClure with second degree rape of a child, third degree rape of a child, and sexual exploitation of a minor. Law enforcement officers later executed a search warrant for McClure's former residence, from which they seized a desktop computer that contained 17 images of RH in various stages of undress. The State subsequently added a charge of second degree possession of depictions of a minor engaged in sexually explicit conduct.

Before trial, McClure moved to exclude testimony by Dr. Yolanda Duralde, a child abuse specialist, who examined RH in April 2011. The State sought to have Dr. Duralde testify regarding the reason children frequently delay in reporting sexual abuse. McClure argued that such testimony would be an improper comment on RH's credibility. The trial court refused to exclude this testimony.

The case proceeded to trial. Voir dire took place in open court, during which the parties individually questioned jurors and made for cause challenges. The trial court addressed an

---

[1] Because Lee McClure and Norma Jean McClure share the same last name, we refer to Norma Jean by her first name for clarity. We intend no disrespect.

objection to one of the State's questions to a juror during a sidebar conference. The parties also made peremptory challenges and the trial court announced its rulings on two for cause challenges during a sidebar conference.

At trial, Dr. Duralde testified that child sexual abuse perpetrators are usually "very close to the family or within the family structure so they have access to the child." Report of Proceedings (RP) (Aug. 23, 2012) at 781. Dr. Duralde also stated, "It's very common particularly in pediatric sexual abuse that children don't disclose right away. They usually disclose weeks to months, maybe years later when they feel safe or feel like there's a change in the family structure so that they can then make that disclosure." RP (Aug. 23, 2012) at 781-82. Dr. Duralde further testified that child sexual abuse victims often cannot recall specific dates and times of abuse.

RH testified that McClure began having sexual intercourse with her when she was 12 years old. RH testified that the abuse occurred at least once per month until her 16th birthday, when she reported the abuse to her father. She also stated that McClure took photographs of her without her clothing when she was 14 or 15. RH testified that she delayed in reporting the abuse because she was afraid.

During trial, the court and parties engaged in multiple sidebar conferences. The conferences involved argument on evidentiary objections and discussion regarding witness scheduling issues.

After the State rested, McClure moved to dismiss the charge for second degree possession of depictions of a minor engaged in sexually explicit conduct. He argued that there

was insufficient evidence to prove that he knowingly possessed the images of RH because the images were not intentionally saved on the computer. The trial court denied the motion.

In closing argument, the State referenced Dr. Duralde's testimony to explain why RH could not recall specific incidents of abuse or dates on which the abuse occurred. The State argued, "Recall Dr. Duralde's testimony, that people generally can't do that. Especially when you've got something that happens repeatedly, but kids in particular, they're not going to be able to give you specific instances." RP (Aug. 12, 2012) at 976-77. The State continued, "She's being asked to talk about something that her stepfather did to her, sexually, in a strange and intimidating environment, from that stand, in front of all of you, other strangers who are present here in the courtroom, but also in front of the person who abused her." RP (Aug. 27, 2012) at 980-81.

The jury found McClure guilty as charged. The trial court determined that McClure was a "persistent offender" under former RCW 9.94A.030(33)(b) (2008)[2] because the jury found him guilty of second degree child rape and because the court found by a preponderance of the evidence that he had committed first degree child rape in 1993. Therefore, the trial court sentenced him to total confinement for life without the possibility of parole as required by RCW 9.94A.570. The trial court also issued a no-contact order prohibiting McClure from any contact with minors.

McClure appeals his convictions and sentence.

---

[2] LAWS OF 2008, ch. 230, § 2

4

ANALYSIS

A.    PUBLIC TRIAL RIGHT

McClure argues that his public trial right was violated when, during various sidebar conferences, the trial court addressed an objection to a voir dire question, allowed counsel to make peremptory juror challenges, announced its rulings on for cause challenges, heard argument on evidentiary objections, and discussed witness scheduling issues. We disagree.

1.    Legal Principles

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee a defendant the right to a public trial. *State v. Wise*, 176 Wn.2d 1, 9, 288 P.3d 1113 (2012). In general, this right requires that certain proceedings be held in open court unless consideration of the five-factor test set forth in *State v. Bone-Club*, 128 Wn.2d 254, 258-59, 906 P.2d 325 (1995) supports closure of the courtroom. Whether a courtroom closure violated a defendant's right to a public trial is a question of law we review de novo, as is the issue of whether a courtroom closure in fact occurred. *Wise*, 176 Wn.2d at 9, 12.

The threshold determination when addressing an alleged violation of the public trial right is whether the proceeding at issue even implicates the right. *State v. Sublett*, 176 Wn.2d 58, 71, 292 P.3d 715 (2012). "[N]ot every interaction between the court, counsel, and defendants will implicate the right to a public trial or constitute a closure if closed to the public." *Id.* We address this issue using the "experience and logic" test, in which we consider: (1) whether the place and process historically have been open to the press and general public (experience prong), and (2) whether public access plays a significant positive role in the functioning of the

5

proceeding (logic prong). *Id.* at 72-73. Only if both questions are answered in the affirmative is the public trial right implicated. *Id.* at 73.

2.    Objections to Voir Dire Questions

McClure argues that his public trial right was violated when the trial court heard an objection to one of the State's questions to a juror at a sidebar conference. We disagree.

During voir dire, the State asked a prospective juror, "[I]f I asked you right now to think of your last sexual experience and stand up and tell us about it. . ." RP (Aug. 7, 2012) at 106. McClure objected in open court and requested a sidebar discussion. It appears from the record that only a discussion of the propriety of the question itself, not the actual questioning of prospective jurors, occurred during the sidebar conference.

Applying the experience prong of the *Sublett* test, we note that neither party cites any authority suggesting that objections to questions to prospective jurors made during voir dire historically have been addressed in public. Further, the cases holding that voir dire is subject to the public trial right involved the actual questioning of jurors in a closed court. *See, e.g., State v. Strode*, 167 Wn.2d 222, 226-27, 217 P.3d 310 (2009) (individual voir dire of jurors in chambers violated public trial right); *In re Pers. Restraint of Orange*, 152 Wn.2d 795, 812, 100 P.3d 291 (2004) (public trial right violated when entire voir dire closed to all spectators).

Here, by contrast, there is no indication that any prospective juror was subjected to questioning off the record. Accordingly, we hold that McClure's challenge to the practice of sidebar discussions for objections on jury questions during voir dire does not satisfy the "experience" prong of the experience and logic test. Therefore, argument on objections to voir dire questions does not implicate the public trial right.

6

3.    Peremptory Juror Challenges

McClure argues that the trial court violated his right to a public trial by allowing peremptory juror challenges to be made at a sidebar conference. We held in *State v. Dunn*, 180 Wn. App. 570, 321 P.3d 1283 (2014) and again in *State v. Marks*, No. 44919-6-II, 2014 WL 6778304, (Wash. Ct. App. Dec. 2, 2014) that exercising peremptory challenges does not implicate the public trial right. Accordingly, we hold that the trial court did not violate McClure's public trial right by allowing counsel to make peremptory challenges at a sidebar conference.

4.    For Cause Juror Dismissals

McClure argues that his public trial right was violated when the trial court addressed for cause challenges of jurors 1, 15, and 44 during a sidebar conference.[3] We disagree because at sidebar the trial court merely announced its ruling on the in-court for cause challenges of jurors 1 and 15, and its sua sponte dismissal of juror 44 was based on hardship and was not truly a for cause dismissal.

Division Three of this court in *State v. Love* held that the exercise of for cause juror challenges during a sidebar conference did not violate the defendant's public trial right. 176 Wn. App. 911, 919, 309 P.3d 1209 (2013). However, this division has not yet addressed whether for cause juror challenges implicate the public trial right. In this case, we need not decide whether a party's for cause challenges or argument on those challenges implicates the public trial right because neither party made for cause challenges at the sidebar conference.

---

[3] McClure also references the trial court's dismissal of juror 47. However, although juror 47's dismissal was discussed at sidebar, that juror actually was dismissed for cause in open court.

a. Jurors 1 and 15

Voir dire of jurors 1 and 15 occurred in open court. Significantly, McClure (juror 1) and the State (juror 15) also made for cause challenges of both jurors in open court. The trial court briefly discussed the challenges and deferred ruling until the end of voir dire. The record indicates that at the sidebar conference the trial court ruled on these in-court juror challenges, dismissing both jurors without objection.

The question here is whether the trial court's ruling on the in-court for cause challenges of jurors 1 and 15 implicates the public trial right. Our Supreme Court has not held that the trial court's rulings on for cause challenges must be announced in open court. Therefore, we must apply the experience and logic test to determine if the public trial right applies. *Sublett*, 176 Wn.2d at 73.

The experience and logic test does not suggest that the trial court's ruling on for cause juror challenges implicates the public trial right. Regarding the experience prong, the rulings regarding jurors 1 and 15 here were "announced" in writing on a document that was filed in the public record. We have been cited no authority indicating that this procedure is improper, or that a trial court's act of announcing its rulings on juror dismissals historically has been open to the public. Regarding the logic prong, the public would not play a significant positive role in the functioning of the trial court's ruling on for cause juror challenges. Therefore, we hold that the trial court's announcement of its ruling on in-court for cause juror challenges does not satisfy the experience and logic test.

8

We hold that when voir dire of jurors occurs in open court, and when the parties' for cause challenges of jurors and a discussion of those challenges all occur in open court, a trial court's announcement of its ruling on the challenge does not implicate the public trial right.

b.    Juror 44

The dismissal of juror 44 involves a slightly different situation.  The trial court conducted a brief voir dire of juror 44 in open court, where the juror stated that he was the sole caregiver of his 95-year-old father.  Juror 44 indicated that he needed to take his father to a cardiac maintenance program two times per week and also needed to assist him with dressing, bathing, and other activities because his father had suffered a stroke.  Neither party questioned juror 44 during the remainder of voir dire.  At sidebar, the trial court apparently excused juror 44 without objection from either party. [4]

As with jurors 1 and 15, the record indicates that during the sidebar conference neither party challenged juror 44 for cause.  Instead, the trial court dismissed juror 44 sua sponte because of his caregiver responsibilities.  And although the trial court stated that juror 44 was dismissed for cause, it is clear that the basis of the dismissal was juror hardship.  Under RCW 2.36.100, a trial court has broad discretion to excuse prospective jurors based on undue hardship or extreme inconvenience.  Juror 44 clearly fell within this category.  As a result, the dismissal of juror 44 was akin to an administrative dismissal that we held does not implicate the public trial right.  *See State v. Wilson*, 174 Wn. App. 328, 342-47, 298 P.3d 148 (2013).

---

[4] Even though the trial court stated that it excused juror 44, the jury panel selection list states that juror 44 was not reached.

We hold that the trial court's dismissal of juror 44 based on his caregiver responsibilities did not implicate the public trial right.

5.    Argument on Evidentiary Objections

McClure argues that his public trial right was violated when the trial court heard argument on evidentiary objections and made rulings at sidebar conferences. We disagree.

Our Supreme Court recently addressed this issue in *State v. Smith*, ___ Wn.2d ___, 334 P.3d 1049 (2014). In *Smith*, the court held that sidebar conferences on evidentiary matters do not implicate the public trial right. *Id.* at 1052-55. Accordingly, we hold that the trial court did not violate McClure's public trial right by hearing argument on evidentiary matters at a sidebar conference.

6.    Witness Scheduling Issues

McClure argues that his public trial right was violated when the trial court addressed witness scheduling issues at sidebar. Specifically, the parties discussed at different sidebar conferences RH's ability to take the stand for cross-examination when she was feeling ill and recalling McClure to testify. We disagree.

In *In re Detention of Ticeson*, Division One of this court recognized the wide variety of activities a judge may conduct in chambers, noting that a judge may "sign an agreed order; hold pretrial conferences; speak privately with counsel to caution against uncivil behavior; *inquire as to the time needed for remaining witnesses*; discuss jury instructions; or do any of the myriad things judges do in chambers to ensure trials are fair and to save time." 159 Wn. App. 374, 386, 246 P.3d 550 (2011) (emphasis added). *Ticeson* supports the conclusion that witness scheduling discussions do not implicate the public trial right.

10

Further, the experience and logic test does not support application of the public trial right to these types of discussions. Sidebar discussions to handle the scheduling of witnesses here were the type of activity historically not required to be held in open court. Further, McClure fails to show how holding such discussions on the record would play a significant positive role in the functioning of the trial court.

Accordingly, we reject McClure's argument that discussions regarding witness scheduling issues at sidebar violated his public trial right.

B.  OPINION TESTIMONY

McClure argues that the trial court violated his right to a trial by jury when Dr. Duralde testified that child sexual abuse often is perpetrated by close family members because that testimony was a comment on McClure's guilt. We decline to address this issue because it was not raised in the trial court.

Although McClure moved to exclude Dr. Duralde's testimony on the ground that she was going to improperly comment on RH's credibility by discussing delayed reporting, McClure did not move to exclude her testimony or object at trial for the reason he now raises on appeal – improperly commenting on his guilt. Even if a defendant objects to the introduction of evidence at trial, he or she "may assign evidentiary error on appeal only on a specific ground made at trial." *State v. Kirkman*, 159 Wn.2d 918, 926, 155 P.3d 125 (2007).

Under RAP 2.5(a), we generally do not review an evidentiary issue raised for the first time on appeal. *State v. Robinson*, 171 Wn.2d 292, 304-05, 253 P.3d 84 (2011). McClure does not argue that any of the exceptions to RAP 2.5(a) apply. Therefore, we decline to address this issue.

11

44061-0-II

## C. PROSECUTORIAL MISCONDUCT

McClure argues that the prosecutor committed misconduct by commenting on his right to confront witnesses and by misrepresenting the evidence. We disagree.

### 1. Legal Principles

To prevail on a claim of prosecutorial misconduct, a defendant must show that "in the context of the record and all of the circumstances of the trial, the prosecutor's conduct was both improper and prejudicial." *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 704, 286 P.3d 673 (2012). We review the prosecutor's conduct and whether prejudice resulted therefrom "by examining that conduct in the full trial context, including the evidence presented, 'the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given to the jury.' " *State v. Monday*, 171 Wn.2d 667, 675, 257 P.3d 551 (2011) (internal quotation marks omitted) (quoting *State v. McKenzie*, 157 Wn.2d 44, 52, 134 P.3d 221 (2006)). A prosecutor has wide latitude in making arguments to the jury and may draw reasonable inferences from the evidence. *State v. Fisher*, 165 Wn.2d 727, 747, 202 P.3d 937 (2009).[5]

---

[5] Where, as here, the defendant failed to object to the challenged portions of the prosecutor's argument, he is deemed to have waived any error unless the prosecutor's misconduct was so flagrant and ill-intentioned that an instruction could not have cured the resulting prejudice. *State v. Emery*, 174 Wn.2d 741, 760-61, 278 P.3d 653 (2012). Because we hold that the prosecutor did not engage in misconduct, we do not address waiver.

12

2. Right to Confront Witnesses

McClure argues that the prosecutor's comments regarding RH's difficulty testifying at trial in front of McClure violated his constitutional right to confront witnesses against him. We disagree.

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution give a defendant the right to confront the witnesses against him or her. "The State can take no action which will unnecessarily 'chill' or penalize the assertion of a constitutional right and the State may not draw adverse inferences from the exercise of a constitutional right." *State v. Gregory*, 158 Wn.2d 759, 806, 147 P.3d 1201 (2006) (quoting *State v. Rupe*, 101 Wn.2d 664, 705, 683 P.2d 571 (1984)). Therefore, the State may not invite the jury to draw a negative inference from the defendant's exercise of a constitutional right, including the right to confront witnesses against him. *Gregory*, 158 Wn.2d at 806.

However, "not all arguments touching upon a defendant's constitutional rights are impermissible comments on the exercise of those rights." *Id.* at 806. The question is whether the prosecutor "manifestly intended the remarks to be a comment on that right." *State v. Crane*, 116 Wn.2d 315, 331, 804 P.2d 10 (1991). "[S]o long as the focus of the questioning or argument 'is not upon the exercise of the constitutional right itself,' the inquiry or argument does not infringe upon a constitutional right." *Gregory*, 158 Wn.2d at 807 (quoting *State v. Miller*, 110 Wn. App. 283, 284, 40 P.3d 692 (2002)).

Here, during closing argument the State discussed RH's difficulty recalling specific instances of abuse or dates on which the abuse occurred. The State commented:

13

> It's very hard for her to verbalize, for her to describe to you, for her to find the words. She didn't have the words to explain it, what he did to her. So when you're thinking about her testimony specifically, remember these things. She's being asked to talk about something that her stepfather did to her, sexually, in a strange and intimidating environment, from that stand, in front of all of you, other strangers who are present here in the courtroom, but *also in front of the person who abused her*.

RP (Aug. 27, 2012) at 980-81 (emphasis added).

McClure cites *State v. Jones*, in which Division One of this court held that the State violated the defendant's right to confrontation when the prosecutor suggested that the defendant was frustrated when he could not make eye contact with the victim and that the victim's courtroom contact with the defendant was so traumatic that she could not return to court. 71 Wn. App. 798, 811-12, 863 P.2d 85 (1993). The court held that the comments invited the jury to draw a negative inference from the defendant's exercise of his right to confront witnesses. *Id.* at 811-12.

However, the prosecutor's comments here involved a general discussion of why RH's testimony was credible and the emotional toll imposed on RH, comments similar to those approved by our Supreme Court in *Gregory*. In that case, the victim testified that having to appear in court and be cross-examined was horrific. *Gregory*, 158 Wn.2d at 805-06. The prosecutor referenced this testimony in closing, implying that the victim would not have subjected herself to taking the stand had she not been telling the truth. *Id.* Our Supreme Court held that the comments were not improper because they were offered to support the victim's credibility. *Id.* at 808. The court reasoned that "[t]he State did not specifically criticize the defense's cross-examination of [the victim] or imply that [the defendant] should have spared her the unpleasantness of going through trial." *Id.* at 807.

14

Here, as in *Gregory*, the prosecutor discussed RH's difficulty testifying to explain the inconsistencies in her testimony and to establish her credibility. Although the prosecutor specifically mentioned RH having trouble testifying in front of McClure, the comment was made in the context of RH's difficulty explaining the abuse and how the public nature of the discussion amplified her discomfort. Further, unlike in *Jones*, in which the prosecutor specifically referenced the defendant's attempt to make eye contact with the victim, the State did not specifically criticize McClure's cross-examination of RH or imply that McClure "should have spared her the unpleasantness of going through trial." *Gregory*, 158 Wn.2d at 807; *see also Jones*, 71 Wn. App. at 811-12.

Considering the argument as a whole, the prosecutor's comments did not improperly infringe on McClure's right to confront witnesses. Accordingly, we hold that McClure's prosecutorial misconduct claim on this basis fails.

3. Arguing Facts Not in Evidence

McClure argues that the prosecutor improperly argued facts not in evidence during closing argument by mischaracterizing Dr. Duralde's testimony regarding sexual abuse victims' inability to recall specific dates and times that the abuse took place. We disagree.

A prosecutor has wide latitude in closing argument to draw reasonable inferences from the evidence and to express such inferences to the jury. *State v. Stenson*, 132 Wn.2d 668, 727, 940 P.2d 1239 (1997). However, a prosecutor commits misconduct by arguing to the jury based on evidence outside the record. *Glasmann*, 175 Wn.2d at 704.

At trial, Dr. Duralde testified that most children have trouble recalling specific dates and times when sexual abuse occurred. She testified that the same was true for adults because "if

15

something has occurred over a period of time, it certainly is harder to say, 'Oh, it was this day' or 'It was that day,' and to sort of pinpoint it because sometimes it sort of blends together." RP (Aug. 23, 2012) at 794. In closing argument, the State referenced this testimony, stating:

> [R]emember Dr. Duralde explaining that this is typical of kids, to not be able to give specific dates, specific instances, particularly when they occurred over an extended period of time. They're bound to blend together, as they did for her. Instances that stood out did so because they were slightly different, like in the car, or the one time they did it in [AM]'s room. They were different. Even then she couldn't say exactly when it happened because it was in the context of this same thing happening over and over again.

RP (Aug. 27, 2012) at 982.

McClure argues that the prosecutor mischaracterized Dr. Duralde's testimony that victims have trouble remembering dates and times of abuse by stating that victims also have trouble recalling "specific instances" of abuse. Br. of Appellant at 24. Although Dr. Duralde did not specifically mention "specific instances" of abuse, her testimony, when taken in context, generally conveyed that victims have difficulty recalling specific dates on which instances of sexual abuse occurred because of the ongoing nature of the abuse. The prosecutor conveyed a similar message in closing, and the fact that the prosecutor mentioned "specific instances" in addition to specific dates and times does not amount to a mischaracterization of Dr. Duralde's statements.

The prosecutor's comments regarding Dr. Duralde's testimony were not improper. Accordingly, we hold that McClure's prosecutorial misconduct claim on this basis fails.

16

D.    SUFFICIENCY OF EVIDENCE OF POSSESSION

McClure challenges the sufficiency of the evidence to support his conviction for possession of depictions of minors engaged in sexually explicit conduct because the State failed to prove that he knowingly possessed the images found on his computer. We disagree.

1.    Standard of Review

A criminal defendant challenging the sufficiency of the State's evidence on appeal admits the truth of that evidence, and we draw all reasonable inferences therefrom in the State's favor. *State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014). Evidence is legally sufficient to support a guilty verdict if any rational trier of fact, viewing the evidence in the light most favorable to the State, could find the elements of the charged crime beyond a reasonable doubt. *State v. Owens*, 180 Wn.2d 90, 99, 323 P.3d 1030 (2014). We defer to the trier of fact on issues of conflicting testimony, witness credibility, and persuasiveness of the evidence. *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

2.    Sufficient Evidence of Knowledge

The jury found McClure guilty of second degree possession of depictions of a minor engaged in sexually explicit conduct. A person commits the crime of second degree possession of depictions of a minor engaged in sexually explicit conduct "when he or she knowingly possesses any visual or printed matter depicting a minor engaged in sexually explicit conduct." RCW 9.68A.070(2)(a).

In order to satisfy the knowledge requirement in RCW 9.68A.070(2)(a), the State must prove that the defendant (1) knowingly possessed visual or printed matter depicting a minor

17

engaged in sexually explicit conduct, and (2) knew the person depicted was a minor. *State v. Garbaccio*, 151 Wn. App. 716, 734, 214 P.3d 168 (2009). Under RCW 9A.08.010(1)(b):

> A person knows or acts knowingly or with knowledge when:
> (i) he or she is aware of a fact, facts, or circumstances or result described by a statute defining an offense; or
> (ii) he or she has information which would lead a reasonable person in the same situation to believe that facts exist which facts are described by a statute defining an offense.

At trial, the State's computer crimes detective testified that he discovered 17 thumbnail images of RH in various stages of undress on McClure's computer. He stated that the files were not actually saved to the computer and that the images were likely saved while a digital camera was attached to the computer and that while the photos were being viewed on the computer, "in the background, the program has a hidden file that's storing the pictures you're clicking on." RP (Aug. 8, 2012) at 174. The images were then copied to the computer's hard drive when the computer was shut down. The detective further explained that the average computer user would not be able to find the images.

McClure argues that the State failed to prove that he had knowledge that he possessed the images found on his computer because the images were not intentionally saved to the computer and were difficult to find. However, the knowledge required under RCW 9.68A.070(2)(a) is simply knowledge that the defendant possessed the depictions. There is no requirement that the defendant have specific knowledge that the depictions were located in a particular place, here McClure's computer. *See Garbaccio*, 151 Wn. App. at 734.

There was ample evidence from which a rational juror could have found that McClure knew that he possessed the images even if he did not know they were on his computer. The

18

detective testified that the file path for the pictures included McClure's user name. In addition, the computer was in McClure's home, McClure frequently used it, he controlled the children's access to it, and had his own password. There also was evidence that McClure owned a digital camera and that others were required to ask permission to use it. Further, RH testified that McClure took the photographs of her that were found on the computer.

Viewing this evidence in the light most favorable to the State, a rational trier of fact could find that McClure knew he possessed the images found on his computer. Accordingly, McClure's challenge to the sufficiency of the evidence on his conviction for possession of depictions of minors engaged in sexually explicit conduct fails.

E.    PERSISTENT OFFENDER SENTENCE

McClure argues that his persistent offender sentence violates his due process and equal protection rights because his prior conviction was not proved to a *jury* beyond a reasonable doubt. However, our Supreme Court recently confirmed that for the purposes of persistent offender sentencing, a judge rather than a jury may find the fact of a prior conviction by a preponderance of the evidence. *State v. Witherspoon*, 180 Wn.2d 875, 891-92, 329 P.3d 888 (2014). Therefore, McClure's arguments fail.

F.    PROHIBITION ON CONTACT WITH MINORS

McClure argues that the trial court's sentencing condition that prohibits him from contact with minors interferes with his fundamental right to parent his minor son. We disagree.

1.    Crime-Related Prohibitions

"As a part of any sentence, the court may impose and enforce crime-related prohibitions and affirmative conditions as provided in this chapter." RCW 9.94A.505(8). A "[c]rime-related

19

prohibition" is an order "prohibiting conduct that directly relates to the circumstances of the crime." RCW 9.94A.030(10). This includes no-contact orders. *State v. Armendariz*, 160 Wn.2d 106, 113, 156 P.3d 201 (2007).

We review a trial court's imposition of crime-related prohibitions for abuse of discretion. *State v. Warren*, 165 Wn.2d 17, 32, 195 P.3d 940 (2008). A trial court abuses its discretion with regard to a sentencing condition if its decision is manifestly unreasonable or based on untenable grounds. *State v. Corbett*, 158 Wn. App. 576, 597, 242 P.3d 52 (2010). Generally, crime-related prohibitions will be upheld if they are reasonably related to the crime. *Warren*, 165 Wn.2d at 32.

However, "[m]ore careful review of sentencing conditions is required where those conditions interfere with a fundamental constitutional right." *Id.* at 32. Conditions that interfere with fundamental rights must be "reasonably necessary to accomplish the essential needs of the State and public order." *Id.* In addition, such conditions must be "narrowly drawn," and "[t]here must be no reasonable alternative way to achieve the State's interest." *Id.* at 34-35. "[T]he interplay of sentencing conditions and fundamental rights is delicate and fact-specific, not lending itself to broad statements and bright line rules." *In re Pers. Restraint of Rainey*, 168 Wn.2d 367, 377, 229 P.3d 686 (2010).

Even though we must review sentencing conditions that interfere with fundamental rights carefully, we still review the imposition of such conditions for an abuse of discretion. *Warren*, 165 Wn.2d at 33; *Corbett*, 158 Wn. App. at 601.

2. Fundamental Right to Parent

The rights to the care, custody, and companionship of one's children are fundamental constitutional rights. *Warren*, 165 Wn.2d at 34. More specifically, parents have a fundamental

20

constitutional right to raise their children without State interference. *Corbett*, 158 Wn. App. at 598. However, parental rights are not absolute. *Id.* A trial court can impose a condition restricting a defendant's access to his or her own children if the condition is "reasonably necessary to further the State's compelling interest in preventing harm and protecting children." *Id.*

3. Reasonable Necessity of No Contact Order

McClure argues that the prohibition from contact with all children, including his son, was not reasonably related to the crime he committed because both the present offenses and his 1993 conviction were committed against girls that were not his biological children.

Washington courts have been reluctant to uphold no-contact orders with classes of persons different than the crime victim. *Warren*, 165 Wn.2d at 33. Three cases are illustrative. In *State v. Letourneau*, the court invalidated a condition prohibiting the defendant from unsupervised contact with her biological minor children based on her conviction for second degree rape of a child, when the victim was not one of her own children. 100 Wn. App. 424, 437-442, 997 P.2d 436 (2000). In *State v. Ancira*, the court invalidated a condition prohibiting the defendant from contact with his two minor children based on a conviction for violation of a no-contact order regarding his wife. 107 Wn. App. 650, 653-55, 27 P.3d 1246 (2001). In *State v. Riles*, our Supreme Court invalidated a condition prohibiting the defendant from contact with minors based on a conviction for the rape of an adult. 135 Wn.2d 326, 349-50, 957 P.2d 655 (1998).

But here McClure's son was not in a different class of persons than McClure's victim, his step-daughter RH. As McClure points out, there are differences between RH and AM. RH is a

girl, and she is McClure's step-daughter. AM is a boy, and he is McClure's biological son. However, the two children have one significant similarity – McClure lived in the same home with and parented both of them. Two cases have affirmed a trial court's sentencing condition prohibiting the defendant from contact with his biological child when the victim was not his biological child. The key in both cases was that the defendant lived with both the victim and the child in a parental capacity.

In *State v. Berg*, the defendant lived with his girlfriend's two children and a biological daughter he had with his girlfriend. 147 Wn. App. 923, 927, 198 P.3d 529 (2008). The defendant was convicted of rape and child molestation of his girlfriend's daughter. *Id.* at 926-30. The defendant testified that he had parented his victim. *Id.* at 930. Division One of this court affirmed a sentencing condition that prohibited the defendant from unsupervised contact with any female minor, including his biological daughter. *Id.* at 942-44. The court held that because Berg lived with the victim and committed the abuse in the home, an order restricting contact with other female children who lived in the home was reasonable to protect those children from the same type of harm. *Id.* at 943.

In *Corbett*, the defendant was convicted of raping his step-daughter. 158 Wn. App. at 581-86. The defendant lived with the victim and was her primary caregiver when she was not with her biological father. *Id.* at 582. The defendant also had two biological sons. *Id.* at 597. We affirmed a sentencing condition barring the defendant from having contact with his minor sons. *Id.* at 597-601. We emphasized that, as in *Berg*, the defendant lived in the same home as his victim. *Corbett*, 158 Wn. App. at 598-99. Because the defendant was in a parenting role and sexually abused a minor in his care, the no-contact order was necessary to protect the defendant's

children "because of his history of using the trust established in a parental role to satisfy his own prurient desire to sexually abuse minor children." *Id.* at 599.

In addition, in *Corbett* we expressly rejected the same argument McClure makes here – that the defendant's male children did not fall within the class of his female victim. *Id.* at 600-01. We stated:

> Here, Corbett's convicted crime is the sexual abuse of J.O., *a child whom he parented*. Because Corbett's victim was a minor girl *whom he parented*, his classes of victims are "minors he parents" in addition to "minor girls." Corbett's crime establishes that he abuses parental trust to satisfy his own prurient interests. The trial court's no-contact order prohibiting Corbett from having contact with his biological children is directly related to his crime because they fall within a class of persons he victimized.

*Id.* at 601 (emphasis in original).

Here, the facts surrounding McClure's abuse of RH are analogous to those in *Corbett*. McClure sexually abused a child whom he parented. Therefore, RH and McClure's son were in the same class of persons – children whom McClure parented. And this means that the sentencing condition was reasonably related to the State's interest in protecting AM. The fact that RH and AM are a different gender is immaterial.

We hold that the trial court did not abuse its discretion in imposing a sentencing condition that prohibited McClure from contact with his biological son.

G.     SAG Arguments

McClure asserts in his SAG that (1) the jury was prejudiced against him because some of its members stated during voir dire that they believed someone charged with the same crimes as McClure must be guilty, and (2) the State improperly asked leading questions to RH. We reject these assertions.

23

44061-0-II

First, the trial court excused for cause the prospective jurors who indicated they would be unable to remain impartial. Because none of these prospective jurors were empaneled in the jury, their views could not prejudice McClure.

Second, the trial court did not abuse its discretion by allowing the prosecutor to use leading questions while questioning RH. Under ER 611(c), leading questions may only be used on direct examination "as may be necessary to develop the witness' testimony." The trial court has broad discretion to determine whether leading questions are necessary to develop a witness's testimony. *State v. Delarosa-Flores*, 59 Wn. App. 514, 517, 799 P.2d 736 (1990). Considering the traumatic nature of RH's testimony and her young age, we hold that the trial court did not abuse its discretion by allowing the leading questions in this case.

We affirm McClure's convictions and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record pursuant to RCW 2.06.040, it is so ordered.

MAXA, J.

We concur:

JOHANSON, C.J.

MELNICK, J.

24